## Cooper *against* Smith.

A deposition regularly taken in an action of ejectment, may be read in evidence in another action of ejectment for the same land between the same parties in interest, although the parties to the suit be not the same: but it must be made to appear by him who offers the deposition, that the ejectment was for the same land.

Neither tenants, nor those who come into possession under them, will be permitted to controvert the title of the landlord in an ejectment by him or his grantee, by showing a better title either in themselves or in a third person.

ERROR to the common pleas of *Westmoreland* county.

Alexander Cooper and others, heirs at law of Robert Cooper, against Bela B. Smith. Ejectment for one hundred acres of land.

The plaintiff gave in evidence a deed for the land, dated the 12th of April 1770, from C. Winemiller to George Woods, from Woods to Pendegrass, dated the 17th of June 1772; from Pendegrass to

[Cooper v. Smith.]

Simrall, dated the 4th of October 1803, and agreement between Simrall and Robert Cooper, dated the 14th of September 1818, by which the former agreed to sell the land to Cooper, and proved that the plaintiffs were the heirs at law of Robert Cooper, deceased. They then gave in evidence the deposition of Nancy French as follows:—

" Westmoreland county, ss.—Personally appeared before me, a justice of the peace in and for the county of Westmoreland, Nancy French, and being sworn according to law, deposeth and saith, Mr Robert Cooper put me to keep possession on the piece of land opposite Dr Smith's brick house, in Rostraver township, in a house that stood in a field that Dr Smith has now in his possession. (Mrs Smith requested me to go away and leave it; I told her I did not like to go away, that I had passed my word to Cooper, that I would stay and keep possession.) I wanted to get some wood cut and Dr Smith told me if I got a stick cut, he would indict the first man that would cut a stick. Mrs Smith again got me to go away; I told her I did not like to go away, I would be breaking my word, she said, what was a woman's word? Mr Smith said I was setting there defrauding the owner out of the land; they had bought the land and paid for it—and I did not know but what I was—I then went away. Amzi Smith hauled me away.

Question by plaintiff.—" How long were you on the land, tenant under Cooper ?"

Answer.—" Two years, as near as I can mind, and paid some rent.

Question by the plaintiff.—" What was the reason you gave up the possession to Dr Smith, and what did you get for going ?

Answer.—" I was over persuaded and they moved me away, and I got a house and garden for one year, ten dollars in money, and twenty weight of wool I got from Mrs Smith, and the Doctor never said any thing to me about it."

Question by the plaintiff.—" What time did you move away; was it day or night?"

Answer.—" It was in the night; I was moved by Amzi Smith and Kenneth Scoby; I did not see the Doctor, nor one of his family, but Amzi Smith, and he was married and away."

The plaintiff then examined several witnesses on the subject of the possession, for the purpose of proving it to have been in accordance with the deeds.

The defendant then gave in evidence a warrant for the land in dispute, dated the 14th of September 1814, interest from the 1st of March 1770, a survey made in pursuance of it regularly returned and a patent; and then examined several witnesses and read depositions to prove the possession of the defendant, and those under whom he claimed. The testimony on this subject by the plaintiffs and defendant, is not material to an understanding of the points decided.

VIII.—2 v

[Cooper v. Smith.]

During the progress of the trial the plaintiffs offered in evidence the deposition of John Simrall, which had been regularly taken in an action of ejectment, brought in 1836 by Bela B. Smith, the present defendant, against John Bobb. This was objected to by the defendant and rejected. The plaintiffs brought an ejectment for the land in 1829 and in in 1837, took a nonsuit and then brought this suit. That part of the charge of the court which follows, was the subject of exception.

"If Robert Cooper or his heirs had brought their ejectment speedily, and a jury had been satisfied that Dr Smith had obtained the possession surreptitiously: that he had induced the tenant of Robert Cooper to become disloyal, to break her faith, and to surrender the possession to him without the knowledge of Cooper, that, in short, was a plan and contrivance to change their situations as regarded the possession, as it appears to have been, the verdict should be in favour of the plaintiff, as he would have a right to recover the possession of his tenants without showing any further title.

"But we must bear in mind the nature of the claim of the plaintiffs. It is a pre-emption, which might have been made good by settlement and perfected by a patent, but in itself was no title. Robert Cooper lived till 1825 or 1826. The present ejectment was brought to August term 1837, fourteen years after the removal of Mrs French. It is true, that an ejectment was brought to February term 1829, and in 1837, the plaintiff became nonsuit. That suit then, owing to the fault or misfortune of the plaintiffs, failed, and the most that can be said of it is, that it was a claim and an assertion of their right.

"In many cases where there is a lapse of time it becomes the duty of the court to pronounce that the claim of an improver, or even of a settler, has been abandoned, or perhaps more properly speaking, lost in law by his negligence or laches, and upon the whole of the testimony in this case, it appears to us to fall within that class of cases.

"Here the ancestor of the plaintiff was dispossessed in 1822 or 1823; Robert Cooper lived till 1825 or 1826, he brought no suit, and his heirs remained supine until 1829; when they bring an ejectment, and in May, 1837, became nonsuit, and the present suit is brought to August term following. Such a delay the law pronounces an abandonment, and the plaintiff's claim to the land is extinguished, and consequently the defendant is entitled to your verdict."

*J. B. Alexander*, for the plaintiffs in error.
*H. D. Foster* and *Coulter, contra*.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned is a bill of exception to

[Cooper v. Smith.]

the opinion of the court below, rejecting the evidence of Alexander Simrall, taken under a commission issued in a former action of ejectment, brought in 1816 by the defendant here against John Robb for some land, of which it would appear Robb was tenant at that time to Simrall. If it were the same land that is in dispute here, I am inclined to think that the evidence was admissible; for the parties and the titles set up there would seem, if the land were the same, to have been legally the same as here, which would undoubtedly render the evidence admissible. But then it was incumbent upon the plaintiffs, who offered it, to show first, before they could claim to have it admitted, that the land was the same. This, however, according to our paper books, does not appear to have been shown; and consequently we cannot say that the court erred in rejecting the evidence.

The two remaining errors relate to the same question, and will, therefore, be considered together, or as one. The question raised by them is, whether the court below did not err in charging the jury as they did, by instructing them, in effect, that although Smith had obtained his first possession of the land in dispute from Mrs French, then the tenant of Robert Cooper, from whom the plaintiffs derive their claim as his heirs-at-law, yet because Cooper, the ancestor, and the plaintiffs had delayed the commencement and prosecution of their action to recover the possession of Smith, from the year 1822 or 1823, when he obtained it first, till the time of bringing this suit, they must be considered as having abandoned not only their original pre-emption claim which they set up to the land, but likewise their right to demand and recover the possession thereof, which Smith acquired from the tenant of their ancestor. In this we think the court erred; because, as to that portion of the land in dispute, which Smith obtained the possession of from Mrs French, it is clear that, upon principles of sound policy, law, and reason, he cannot in this action claim to be in any better situation, or be permitted to set up any other defence than she could do were she the defendant instead of him. Mrs French, according to her testimony, undoubtedly held as a tenant under Cooper, for his use, the possession of that portion of the land which he gave to her for that purpose; and Smith, having accepted of it from her, must be considered as holding it in the same manner that she did for the use of Cooper or his heirs, the plaintiffs. Jackson *v.* Harder, 4 *Johns. Rep.* 202; Jackson *v.* Whilford, 2 *Caines's Rep.* 215; Brant *v.* Livermore, 10 *Johns. Rep.* 358; 2 *Camp.* 12; Jackson *v.* Hinman, 10 *Johns. Rep.* 292; Jackson *v.* M'Leod, 12 *Ibid.* 182; Galloway *v.* Ogle, 3 *Binn.* 468. It is obvious that the title of a landlord to real estate, though perfectly good and indefeasible, would frequently be rendered the next thing to worthless, if his tenants, or third persons, prevailing upon the tenants to let them into possession, were permitted to call his title in question, and to make him show that it was better than any other to the land, before they should be

compelled to surrender the possession of it to him.   The cases cited above show incontestably that neither tenants nor those coming into possession under them will be permitted to controvert the title of the landlord, in an ejectment brought by him or his assignee to recover the possession, by showing a better title either in themselves or in a third person.   Besides, it is perfectly reasonable, and natural justice would seem to require that, as the possession was received from him, it ought to be restored to him after the expiration of the lease or time for which he parted with it, whenever he shall please to demand it.   And upon this principle it is, I take it, when an express covenant is not contained in the lease, on the part of the lessee, to restore the possession at the expiration thereof, which is frequently introduced into it, an obligation to that effect is always implied by force of law.   The rule also, which prevents the tenant or those taking his place, from controverting the title of the landlord, is alike applicable, whether the right of the landlord be legal or equitable, perfect or imperfect.   The circumstance, therefore, of Cooper's right or claim to the land being an improvement, or *preemption* merely, as the court below term it, and upon which their charge to the jury, that the plaintiffs had abandoned their right, was made to rest mainly, if not entirely, was altogether immaterial; because such a right or claim to the land was just as good to sustain the lease given of it to Mrs French and make all the obligations of a tenant as completely binding upon her, as if Cooper's title thereto had been the most perfectly legal title in the world.   It cannot be doubted that the man who, having commenced an improvement upon land, leases it for the purpose of having a personal residence upon it, with a view to perfect what is called a settlement-right by means of the lessee, becomes invested with all the rights of a lessor or landlord, as between him and the lessee, or those coming into the possession by the consent of the lessee, to as great an extent fully, as if his title to the land were perfect in every respect.   To make a lease binding and valid, the mere inception of a claim on the part of the lessor is sufficient, provided he deals fairly and is guilty of no fraud in inducing the tenant to take a lease from him of the land.   If Mrs French, therefore, had remained in the possession until the bringing of this action, and during the intermediate space of time, she had acquired Smith's right to the land, and the action had been brought against her instead of Smith, on account of her refusing to surrender the possession to the heirs of her lessor, no one, I imagine, conversant with the law relating to lessor and lessee, would have supposed that she could have opposed their recovery successfully by setting up the title obtained from Smith, though it were the better and the only good title that there is for the land. Galloway *v.* Ogle, 3 *Binn.* 468.   If she could not, as the case just cited clearly shows, it is also equally clear that Smith, having stepped into her shoes, cannot be permitted to set it up as a defence in order to prevent a recovery of that part of the

[Cooper v. Smith.]

land in dispute, which he obtained the possession of from her. Jackson *v.* Harder, 4 *Johns. Rep.* 202. It must not be supposed either that Smith is entitled to claim any advantage to himself, by making the possession obtained of Mrs French adverse to Cooper's right, by disclaiming the latter and setting up his own right in lieu thereof to the land; because the right of the plaintiffs to recover the possession, even after Smith obtained it of Mrs French, did not depend in the least upon the will of Smith, but upon the contract between their ancestor and Mrs French, creating the relationship of landlord and tenant, which was afterwards extended to the parties here, by the law's devolving the right of landlord upon the plaintiffs, upon the death of their ancestor, and by Smith's own act in taking the possession under Mrs French, the tenant. Therefore, no lapse of time, notwithstanding Smith's disclaimer of Cooper's title or of his holding under him, short of twenty-one years from the time when his possession became adverse to Cooper and the latter gained a knowledge of the fact, can or ought to be deemed sufficient to bar the plaintiffs' recovery. Under the statute of limitations twenty-one years' adverse possession, if suffered to run without a suit being brought and prosecuted by the plaintiffs, would no doubt bar their recovery in an action commenced afterwards. But the principle or doctrine of abandonment seems to be wholly inapplicable to their case here, so far as Smith acquired the possession under his agreement with Mrs French. According to the evidence, this would seem to extend, at least, to the house and garden, and perhaps to no other part of the land in dispute. If so, then the doctrine of abandonment would seem to be applicable to the residue; and, had the charge of the court, in this respect, been confined to it, I think it would have been correct. It may be observed, however, that if Smith's title to the land, which he got possession of from Mrs French, be good, a recovery against him in this action will be no objection to his recovering it back in a new action to be commenced thereafter by himself.

Judgment reversed, and a *venire de novo* awarded.