## MATILDA ALLEN v. ASA HOXEY'S ADMINISTRATOR.

1. Before announcing ready for trial in the District Court, it is proper practice to present to the court exceptions to depositions, not only as to the manner in which they were taken, but also, in some instances, on account of the matter sworn to, or of the character of the interrogatories or answers.

2. Some two months before the trial, the plaintiff served the defendant's attorneys with notice that certain objections would be taken to certain depositions returned at the instance of defendant. When the case was called for trial, the plaintiff urged the objections, and the depositions were suppressed; whereupon defendants moved for a continuance on the ground of surprise, etc. *Held*, that it was not error to refuse the continuance.

3. The certificate to a deposition recited that the deponent appeared before B., the clerk of the District Court of T. county, but the certificate was

signed in the name of the clerk "by C., deputy clerk." *Held*, notwithstanding this incongruity, that the certificate shows that the deposition was taken by the deputy ; and the opinion is expressed that, under our statute empowering deputy district clerks to take depositions, etc., the deputy might have certified the deposition in his own name alone. (Paschal's Digest, Article 496.)

4. In a deposition no answer was given to an interrogatory as follows : " State anything else you may know that would be of benefit to the " defendant, connected with the title in controversy." *Held*, that this interrogatory is not in proper form, and, moreover, the failure to answer it must be ascribed to the witness's ignorance of anything more than he had already stated ; wherefore it was not error to overrule defendant's motion to suppress the deposition, based on the omission of an answer to the interrogatory.

5. Testimony by deposition may sufficiently prove the identity and execution of an instrument which is an archive of the General Land Office, notwithstanding the impracticability of attaching the instrument to the deposition—a certified copy being exhibited, and the witness deposing that he had inspected the original in the General Land Office.

6. A grant from the authorities of Coahuila and Texas may have become an archive of the General Land Office, although it was not so executed as to constitute it an authentic act, which would prove itself.

7. The evidence of a single witness may suffice to identify a grant from the Mexican authorities, and to prove its execution by the commissioner.

8. A certified copy of an archive of the General Land Office is entitled to the same force and credit as the original, and is competent evidence whenever the original would be competent.

9. In 1848, H., claiming a six-leagued grant, made a written agreement to sell to B. a small portion of the grant at a stipulated price, provided B. would enter upon and hold possession of the entire grant for H. ; and B.'s purchase was to include any improvements he should make. This agreement was promptly recorded, and B. entered and made enclosures and improvements. These improvements were placed on a part of the six-league grant claimed adversely to H. by A. ; and in 1852, A., for the purpose of getting possession, bought out B.'s improvements and occupied them, but without assuming B.'s engagements to H., or recognizing the latter's title as superior to his own. In 1857, H. sued A. for the land ; and A., besides other defenses, pleaded the three years' limitation, and in support of the plea relied on the possession thus acquired from B. *Held*, in effect, that notwithstanding the relation which existed between H. and B., and the manner in which A. obtained the possession from B., A. was not estopped from prescribing against H. under the three years' limitation.

10. The plea of three years' limitation in this case omitted to aver that the

21

defendant claimed "from or under the sovereignty of the soil;" but inasmuch as the defendant exhibited a title from the government (though junior to the plaintiff's title), the plea is held good, notwithstanding the omission.

ERROR from Bexar. Tried below before the Hon. Thomas H. Stribling.

The opinion and the head-notes indicate the character of the suit and the most material of the facts. Locklin was the tenant of Mrs. Matilda Allen, his co-defendant. He disclaimed any interest, and the defense was made by her. T. J. Allen, to whom reference is made in the opinion, was the last husband of Mrs. Allen.

The Zarza grant, under which Hoxey, the plaintiff, claimed, was made October 17th, 1833. The Samuel T. Allen grant of one league, claimed by the defendant, was made in July, 1835.

It appears that John Barton first settled on the land in 1846, and located upon it his own headright certificate, which, together with his improvements, he sold to Allen in 1852. It is supposable that, in 1848, when he made the contract with Hoxey, outlined in the ninth head-note, he had come to the conclusion that the Zarza grant would prove the best title.

The record of this cause is quite voluminous, but the facts already stated are deemed sufficient for all practical purposes.

*H. P. Brewster*, and *Wœlder & Upson*, for the plaintiff in error.

*F. W. Chandler*, and *James B. Morris*, for the defendant in error. Upon the question of limitation, their argument was as follows:

Thomas J. Allen got possession of the S. T. Allen league by purchasing Barton's improvements and right of possession, and it is proved equally clear that Barton held under Hoxey, who owned the superior title to the land, as above shown.

It will be found that a large portion of the S. T. Allen league

laps over on the corner and east side of the six leagues granted to Zarza and claimed by plaintiff, and we insist that John Barton held the land under Hoxey as his agent and tenant. If Hoxey had sued him he would not have been permitted to deny the title of his landlord. T. J. Allen having purchased Barton's improvements, knowing that he, Barton, held under Hoxey as his tenant, that S. J. Allen and his widow, the present defendant, are estopped from denying their tenancy for Hoxey, and that they cannot be allowed to claim adversely to Hoxey, and avail themselves of the statute of limitation of three years, especially when they have failed to prove that they gave Hoxey any notice that they were holding and claiming adverse to him. We find that Mr. Angel lays down the rule as follows:

" It seems to be also settled, that when the relation of land-" lord and tenant is once established, it attaches to all who may " succeed the tenant, immediately or remotely ; and that a " succeeding tenant is as much disqualified to set up his posses-" sion against the original landlord as the first tenant. And a " holding over of forty years, although the original tenant died " in possession, and was succeeded therein by his son, the latter " of whom paid no rent, was adjudged not adverse to the true " owner." (Angel on Limitations, page 546, Section 442.)

The Supreme Court of Pennsylvania, in the case of Cooper v. Smith, said : " Neither tenants, nor those who come into " possession under them, will be permitted to controvert the " title of the landlord in an. ejectment by him or his grantee, " by showing a better title either in themselves or in a third " person." (8 Watts, 536.)

And the Supreme Court of the United States, in the case of Willison v. Watkins, held the same doctrine and used the following language :

" It is an undoubted principle of law, fully recognized by " this court, that a tenant cannot dispute the title of his land-" lord, either by setting up a title in himself or a third person, " during the existence of the lease or tenancy. The principle

" of estoppel applies to the relation between them, and operates
" with full force to prevent the tenant from violating that con-
" tract by which he claimed and held the possession.   He can-
" not change the character of the tenure by his own act merely,
" so as to enable himself to hold against his landlord, who re-
" poses under the security of the tenancy, believing the posses-
" sion of the tenant to be his own, held under his title, and
" ready to be surrendered by its termination, by the lapse of
" time, or demand of possession." (3 Peters, 43.)

To the same point is the decision of the Supreme Court of
Tennessee, in the case of Dyche v. Gass, where the following
language is used :

" The defendant, in order to bar the plaintiff under this act,
" must show that his possession was taken under a claim hostile
" to the real owner, and that such hostility continued during
" the whole series of years." (3 Yerger, 397.)

In the case of Jackson v. Harper, the Supreme Court of New
York in discussing this question said :

" A title in the State has no peculiar attributes which enure
" to the benefit of a defendant under circumstances in which he
" could not avail himself of an outstanding title in an indi-
" vidual.   A defendant is estopped from contesting the title
" under which he entered, in any manner, as against his original
" landlord, or any other person who has acquired or succeeded
" to his title.   He can no more show that the premises belonged
" to the State, than he can that they belonged to himself ; he
" must first restore the possession which he obtained from his
" landlord, and then, as plaintiff, he may avail himself of any title
" which he has been or may be able to acquire." (See 5 Wen-
dell, 248.)

And we find in Taylor's Landlord and Tenant, after he
has elaborately discussed the whole doctrine, he sums up as
follows :

" No proof of title is required in this action, since, if a tenant
" has once recognized the title of the plaintiff, and treated him
" as his landlord, either by accepting a lease of him, paying rent

" to him, or the like, he is precluded from showing that the
" plaintiff had no title at the time the lease was granted; for
" it is a general rule, founded on reasons of public policy, that
" a tenant shall never be permitted to controvert or raise ob-
" jections to his landlord's title.   And this rule extends to an
" under-tenant, assignee, or any other person claiming under
" the lessor; and is applicable to every species of tenancy,
" whether for years, at will, or by sufferance.   A tenant is not
" permitted to resist the recovery of his landlord by virtue of
" an adverse title acquired during the lease.   Nor can an ad-
" verse claimant, who gets into possession of land by tampering
" with the tenant, resist the landlord's claim where the tenant
" himself could not."   (See page 335.)

And in the case of Jackson v. Ayers, 14 Johnson, page 224,
was a case very similar to the one at bar.   In that case the
court said :

" The agreement entered into for the purchase between Brown
" and the defendant was dated in the year 1810.   This agree-
" ment to purchase was an acknowledgment of the title of
" Brown; and would estop the defendant from setting up an
" outstanding title.   The defendant being in the possession
" when the agreement was entered into, could make no differ-
" ence.   He was in as a mere naked possessor, and must be
" considered in the same light as if he had entered under the
" agreement.   He did not offer to show that he entered under
" Dobkins, or how long Dobkins continued in possession; but
" merely that Dobkins had possession, claiming title, forty years
" ago; and that he, the defendant, now claimed title under him,
" and had a deed from his heirs.   When he obtained such deed,
" or when he first pretended to claim under Dobkins is not
" stated.   It is most probable that it was after he entered into
" the agreement to purchase of Brown, so that, on this ground,
" the evidence was properly rejected; and, indeed, the defend-
" ant was estopped, admitting even that he entered under Dob-
" kins, and had a deed from his heirs at the time he agreed to
" purchase of Brown, unless he was in some way deceived or

" imposed upon in making such agreement.   The offer to show
" an outstanding title in Rogers was clearly inadmissible."

In this case the proof shows that John Barton was in pos-
session of the land when he went voluntarily to the house of
Hoxey, in Washington county, and reduced to writing a con-
tract which he had made by parol two years before, by which
he made the double contract as purchaser and tenant.

In the case of Jackson v. Davis, 5 Cowen, p. 129, the court
said :

" When the relation of landlord and tenant is once estab-
" lished, it attaches to all who may succeed to the possession,
" through or under the tenant, either immediately or re-
" motely."

In the same case, on page 130, the court said :

" The fact of tenancy, in that case, was made out by proof
" of the confessions of one Smith (from whom the defendant
" derived the possession), that he entered under one of the les-
" sors of the plaintiff.   The defendant, to repel the presump-
" tion that he entered in the same character, produced and
" proved a deed from Smith to him, for the consideration of
" three hundred pounds, with full covenants ; and there was
" no evidence that the defendant knew, or had any reason to
" suppose that Smith derived his possession from the lessors ;
" and yet the court held that Smith's acknowledgments, if they
" were evidence of a tenancy in him, were conclusive against
" the defendant.   Indeed, that point was not disputed, and it
" is too clear in principle, as well as authority, to admit of dis-
" cussion."

In the case at bar the proof is clear that the defendant went
into possession of the land in controversy under Barton, who
was Hoxey's tenant by a written contract on record, which was
constructive notice ; and in addition thereto, it is in proof that
her husband and she had actual notice that Barton was a tenant
of Hoxey, and held the land as such.

In the case of Turley v. Rodgers, 1 A. K. Marshall, 181, the
Supreme Court of Kentucky held that " a defendant in eject-

" ment, having procured the possession from the plaintiff's ten-
" ant, will not be permitted to question plaintiff's right."

In the case of Jackson v. Harsen, 7 Cowen, 253, the Supreme
Court of New York said:

" The law seems to be well settled, that when the relation of
" landlord and tenant is established, it attaches to all who may
" succeed to the possession, through or under the tenant, either
" immediately or remotely. This was so held in Jackson v.
" Davis, 5 Cowen, 129. The doctrine is supported in numer-
" ous cases." (2 T. R., 53; Id,. 760, note; 1 Caine's, 444;
2 John's Cases, 223; 3 John's Rep., 499, 223.)

In the case of Pleak v. Chambers, 5 Dana, Ky., 60, it was
held, that " A tenant is held to strict fidelity to his landlord;
" he cannot change the relation in which he stands to him,
" by any contract with, or any attornment to, an adversary
" claimant. Nor would the title of the landlord be affected
" by a recovery of the land in consequence of fraud and col-
" lusion by the tenant."

There is no positive proof in the record, that there was more
than sixty acres in cultivation prior to that date. This being
the amount Barton had enclosed when T. J. Allen bought his
improvements, and to show that is all that she could possibly
hold, we cite the following authorities in the Supreme Court of
Pennsylvania. This point was decided in the case of Hall v.
Powell, and Judge Duncan used the following language:

" The plaintiffs in error have no just cause to complain of
" the court as to this act. Where a man claimed by improve-
" ment enters on the land of another, and has not his preten-
" sions marked out by lines or survey, he is only protected so
" far as is covered by his buildings and improvements, if there
" is neither survey made, nor lines, nor boundaries of such
" improvements. His seisin and possession do not extend
" beyond his actual occupancy by inclosure, and exclusive pos-
" session; it is difficult to conceive how the protection by
" limitation could extend further, and protect possession which
" only exists in the imagination and mind of the improver,

" and assumed no visible, notorious, corporeal, tangible sub-
" stance.

" One enters on a corner of three tracts owned by different
" persons ; if his constructive possession extends, as has been
" contended, to all that a legal settlement on the vacant lands
" of the commonwealth would entitle such settler to, and has
" not defined his boundaries by notorious and visible marks, by
" some positive possession, which of these tracts will his con-
" structive possession embrace ; which of these owners is to
" lose his land by the barraising from the limitation ? The
" election would remain with the trespasser.  He might set
" his heart on the whole of any one of these tracts, or take a
" part of the three, and thus a man be disseized of his land by
" an adverse possession of which the utmost circumspection
" can give no notice by a notorious possession, which did not
" exist in fact."   (See 4 S. and R., 466 Marg. page.)

In the case of Miller v. Shaw, 7 S. and R. 135, Chief Justice
Tilghman said :

" But it is complained of as a very hard thing, that a man
" who expends his time and labor on a tract of woodland should
" be confined to the limits of his inclosure—nay, that even
" within these limits, he should be unable to acquire title by
" less than twenty-one years' possession.   This is looking only
" on one side of the question.   Is it not also hard that a man
" who has bought and paid for his land, should be deprived of
" it without consideration ?   If the settler knows of the prior
" appropriation, he acts dishonestly in attempting to acquire
" title by the act of limitations.   If he is ignorant of it, he is
" unfortunate, but his misfortune is owing to his own negli-
" gence, for with proper diligence he might have known it.
" *   *   *   Another reason why a settler should not gain pos-
" session by construction, beyond the limits of his inclosure, is
" that he is under no obligation to take any definite quantity,
" nor to lay out his land in any particular shape.   *   *   *
" In Jackson ex dem Hardenberg and Wife v. Schoonmaker,
" 2 Johns, 230, the opinion of the court was delivered by C. J.

" Kent, as follows: ' There must be a real and substantial " ' inclosure, an actual occupancy, or *possessio pedis*, which is " ' definite, positive, and notorious, to constitute an adverse " ' possession, when that is the only defense, and to counter- " ' vail a legal title.' "

In the same case, Justice Gibson said :

" It is a well-settled principle, both in England and in our " sister States, that there can be no constructive possession in " favor of a wrong doer; and that a defendant setting up the " statute of limitations, shall hold no more by it than what he " has had in actual occupancy."

The court is respectfully referred to the entire case above cited. In it this question is elaborately and exhaustingly discussed.

Again, in the case of Royer v. Benlow (10 S. & R., 305), Chief Justice Tilghman said:

" The person who has a warrant and survey, has a legal " seizin, without actual entry, through the whole extent of his " survey, and may support an action of trespass. No man has " a right to enter for the purpose of making an improvement " on land appropriated by a prior survey. The person so " entering is bound to take notice of the survey, and is in law " a trespasser. Having entered without title or legal color " of title, his possession is confined to his actual occupation, " and cannot be extended by construction.

" The designation of his claim by marks on the ground, is " not an actual occupation, and consequently does not entitle " him to the protection of the act of limitation. The seizin " of the warrantee is not divested by the marking of lines. " Whatever is inclosed or cultivated even without inclosure, may " be said to be held by an actual adverse possession; and thus " far the warrantee is disseized or ousted. But as to those " tracts which remain in wood and uninclosed, even though the " improver makes what use of them he may find necessary for " fuel, fences, etc., the warrantee is not disseized. The unin- " closed woodland is claimed by two persons, the warrantee,

" who has the right, and the improver, who has no right. In
" that case, the law adjudges the possession to be in him who
" has the right, because it cannot be in two persons claiming
" adversely at the same time. The cutting of wood by the
" improver, is not exclusive of the possession which was in
" the warrantee from the time of his survey. The law does
" not oblige the warrantee to cut wood, in order to continue
" his possession. He might have cut it if he had chosen, and
" he is to be considered with regard to the improver, in the
" same situation as if he actually had cut it. Then, if both
" had cut wood, the possession would have been annexed to the
" right, that is to say, it would have been in the warrantee. If
" A has a warrant and survey, and afterwards B procures a
" warrant and survey, including part of A's land, and then
" enters, and cultivates, and incloses part, the uninclosed part
" included in both surveys is deemed in law to be in the pos-
" session of A, because he has the right."

The case above cited is exactly similar to the one at bar.
Hoxey claims under a grant issued in 1833, while the defend-
ant claims under a title which was granted in 1835. The above
quotation is also peculiarly applicable to the defendant's effort
to claim occupancy by proving that she had cut wood here and
there on the Allen league.

The Supreme Court of New York in the case of Jackson
v. Vermilyea, 6 Cowen, 680, said :

" When a valid possession is acquired in the latter mode, it
" cannot be defeated by a subsequent entry on the same lot,
" making an improvement of a part, and obtaining to the
" whole. The effect of such subsequent entry would be to
" give the person so entering a possession of the part actually
" occupied and improved, but no farther ; a constructive pos-
" session to the unimproved part of the lot would remain in
" him who made the first entry under claim of title, and
" improved a part."

In the case at bar Hoxey went into possession by his tenant
Barton and improved a part of the land before Allen went on it.

The Supreme Court of the United States in the case of Clarke *v.* Courteny, 5 Peters, p. 354, through Justice Story, said:

" The reason is plain—both parties cannot be seized at the " same time of the same land under different titles, and the law " therefore adjudges the seizin of all, which is not in the " actual occupancy of the adverse party, to him who has the " better title.    This doctrine has been on several occasions " recognized in this court.

" In Green *v.* Liter, 8 Cranch, pp. 229, 230, S. C., 3 Peter's " Condensed Reports, pp. 97, 107, the court said : the general " rule is, that if a man enters into lands, having title, his seizin " is not bounded by his occupancy, but is held to be co-exten- " sive with his title.    But if a man enters without title, his " seizin is confined to his possession by metes and bounds. " Therefore the court said, that as between two patentees in " possession claiming the same land under adverse titles, he " who had the better legal title was to be deemed in seizin of " all the land not included in the actual close of the other " patentee.    The same doctrine was held in Barr *v.* Gratz, " 4 Wheat. Report, 213, 223, where the court said, that where " two persons are in possession at the same time under differ- " ent titles, the law adjudges him to have the seizin of the " estate who has the better title.    Both cannot be seized, and " therefore the seizin follows the title, and that where there " was an entry without title, the disseizin is limited to the " actual occupancy of the party disseizing.    And in reference " to the facts of that case, the court held that in a conflict of " title and possession, the constructive actual seizin of all the " land, not in the actual adverse possession and occupancy of " the other, was in the party having the better title."

The Supreme Court of this State, in the case of Cunning- ham *v.* Frandtzen, 26 Texas, 38, enunciated the same doc- trine, and made special reference to the case last above copied from.

And this court, in the case of Ledyard *v.* Brown *et al.*,

in determining the rights of parties claiming the same land, and in discussing the question as to how far the party in possession under the inferior title could hold or avail themselves of the statute of limitation, said, that when Ledyard was in possession under the inferior title, and when Penn also went into possession, his entry was under the older and superior title, it was an interruption of Ledyard's adverse possession to the extent of his (Penn's) claim, if not in conflict with Ledyard's actual possession. (See 27 Texas, 405.)    The case at bar is much stronger, for the proof is abundant, that at the time T. J. Allen got into possession by purchase from Barton, Hoxey's tenant, that Hoxey had other tenants upon the land, as tenants of the whole six leagues; surely, under the above state of facts, from all the authorities cited, the defendant cannot be entitled to more than one hundred acres, to include her improvements.

OGDEN, J.    Two separate actions of trespass to try title to a certain tract of land lying in Williamson and Milam counties, were instituted by Hoxey in his lifetime, against Locklin and Allen.    The two causes were consolidated into one, and, by change of venue, it was finally taken to Bexar county, from whence it comes to this court.    A jury was waived in the court below, and the cause submitted to the court, and we are now asked by both appellant and appellee to reverse the judgment and render another in accordance with their peculiar opinions of the law of the case.    We do not propose to notice all the questions raised by the assignments of errors, but only such as have received great prominence in the record and briefs of counsel.

It is believed to be a very common and proper practice in the District Court, before announcing ready for trial, to present to the court exceptions to depositions taken by commission, not only as to the manner and form of taking the same, but also, in many instances, to the subject-matter sworn to, and the sufficiency or regularity of the interrogatories and answers.    There

was a second application for a continuance, which did not comply with the requirements of the statute, and the court, in its discretion, overruled the same.   And again, an amended motion was made on account of surprise in the ruling of the court in sustaining objections to certain depositions.   But the record shows that counsel were notified of the objections that would be taken months before the sitting of the court.   The objections were properly taken and sustained by the court, and we are of the opinion that the court correctly considered that the surprise could not have been very great.

The exceptions to the testimony of A. H. Willie, on the ground of interest, were correctly overruled, for the reason that Judge Willie had sworn positively that, at the time of giving his testimony, he had no interest, either directly or indirectly, in the result of the suit, and his oath in that particular is uncontradicted.   The fact that he once had an interest in the land in controversy, but had conveyed the same to another party, could raise no presumption of a present interest.

The exceptions to the deposition of Thomas F. McKinney, " that it was not taken by an officer authorized by law to take " depositions, and that it does not show by whom it was " taken," is believed not to be well taken, as the certificate attached to the deposition shows most clearly that it was taken by and subscribed and sworn to before the deputy clerk of Travis county, an officer authorized by law to take depositions. The form of the attestation of the clerk, by his deputy, may be considered somewhat awkward, but it is believed to be in accordance with the usual practice.   We think, however, that the deputy clerk, under the law, would be authorized to certify to the taking of depositions in his own name, as deputy clerk, without using the name of his principal or chief clerk.

The other objection to McKinney's deposition is, that he failed to answer the last cross-interrogatory.   That interrogatory is as follows: " State anything else you may know that " would be of benefit to the defendant in this suit, connected " with the title claimed to have issued to Pedro Zarza."   The

interrogatory itself, if it can be called such, is very objection-able in many respects.   In the first place it is not an interroga-tory, but an order to state all he may know that will benefit the defendants—not the plaintiffs, nor either party to the suit, but whatever he might state must be for the benefit of defend-ants only; and it does not require the witness to state the whole truth.   This is certainly not the form for a general inter-rogatory, as prescribed by the Supreme Court of the United States, in regard to which it is said in Daniel's Ch. Prac., that, when a general interrogatory is inserted, it must be in the form prescribed, or the deposition taken under it will be suppressed upon motion.   But this interrogatory only requires that the witness should state anything else he may know that will bene-fit the defendant.   If, therefore, he knew nothing else, he was to state nothing, and from his very full and clear answers to the previous interrogatories, we are inclined to the opinion that he knew nothing that would benefit the defendants, and could, therefore, state no more.   We are, therefore, of the opinion that the exceptions were properly overruled by the court.

The plaintiff below, in order to sustain his title to the land in controversy, offered in evidence a translated copy, from the General Land Office, of a grant from the government of Coa-huila and Texas, to Pedro Zarza, to the reading of which defendants objected, because the same was not signed by two assisting witnesses, as required by law, and was not, therefore, an authentic document, which would prove itself.   The plaintiff thereupon offered the deposition of McKinney, to prove up the execution of the grant, and the defendants further objected, because the witness did not sufficiently identify the original grant, it not being in court, nor attached to the deposition.

If the original grant was properly an archive in the Land Office, it is difficult to understand how it could be in court or attached to depositions, as the law prohibits the removal of such an instrument from that office.   It was decided in Clay v. Hal-bert, 14 Texas, 189, in Martin v. Parker, 26 Texas, 254, and other cases, that a grant was not null simply because it was

not authenticated by two assisting witnesses, but that it would convey the title without the signature of those witnesses, and was defective only in the authentication.    If this be a correct view of that character of grants, then they are as much an archive as though perfect in every respect.    The grant passed the title to the citizen, and, under the law then in force, the officer extending the title was required to retain the original in his office as an archive ; and an act of the Congress of the late republic of Texas required that all such titles should be transferred to the General Land Office.    Under that law the grant to Zarza is presumed to have been transferred to the Land Office, where it still remains, and cannot be legally removed therefrom ; and, under the law, a certified copy of that grant is entitled to the same force and verity as the original, and may be used in evidence, in any of the courts of this State, when the record would be admissible.    The case of Clay v. Halbert, is quite similar to the one at bar, and it is presumed that a certified copy in that case was admitted without objection, and it may be assumed that the execution of the original was proven in the same manner as the proof in this case.

We think the deposition of McKinney fully and definitely proved the execution of the grant to Zarza.    He testified that he knew the instrument well, having had it in his possession, and at one time was interested in it ; that he has examined it since it came into the Land Office, where it now is ; that he knew all the parties whose signatures are affixed to the grant, and knew their hand-writing and signatures well, and that all the signatures to that instrument are genuine.    We think this deposition places the execution of the grant to Zarza beyond controversy, and that the objection to the introduction of a certified copy of the same was correctly overruled.

The court did not err in permitting the certified copy of the deed from R. M. Williamson to Hoxey to be used in evidence. The loss of the original was fully established, and also the fact that more than ordinary diligence had been used in order to recover the same.    How that loss was brought about need not

now be inquired into, but we think a sufficient predicate was laid for the introduction of the copy, and particularly since proof of the execution of the original was clearly made.

From these title papers, we think there can be no question that the plaintiff below clearly established a good and complete title to the land in controversy, in himself, by a regular chain of transfer from the sovereignty of the soil ; and he must succeed in this suit, unless the appellants, in this court, have established a superior title either in themselves or some one else. They claim no prior title, and they have failed to establish the superiority of the title to the S. T. Allen league, upon which they have resided since 1852. The husband of one of the appellants purchased, at that time, Barton's improvements, and the certificate which he had located on the same ; but this was done, primarily, for the purpose of getting him out of possession of the S. T. Allen league, which T. J. Allen claimed as his own. And it is pretty clearly proven, that when T. J. Allen took possession of the Barton place, he did so under his claim to the S. T. Allen league. There is no evidence in the record that T. J. Allen, during his life, or the appellants since his death, have ever recognized the validity of the Hoxey title, or admitted that they were tenants under that title, but have ever set up and claimed to hold possession under the S. T. Allen title. This title, long before the purchase from Barton, was claimed to be adverse and superior to the Zarza and Hoxey grant; and, so far as T. J. Allen and his family were concerned, this claim was in no wise changed by the purchase of Barton's improvements. They made no agreement to become substituted as Hoxey's tenants, in the place of Barton, nor is there any proof that they ever recognized Barton's or Hoxey's right to occupy the S. T. Allen league. That title of S. T. Allen is sufficient to support appellants' claim of three years' possession, under title from the sovereignty of the soil.

The record shows that Allen went into possession of the land in 1852, and held adverse peaceable possession until the bringing of this suit against Mrs. Allen in 1857. The plea of

adverse possession for three years was somewhat defective, but, with a patent from the government as an exhibit, we are inclined to the opinion that the plea should be sustained to the extent of her possession or actual occupancy. The record shows that at one time there was over one hundred and fifty acres in cultivation, and the District Court allowed to the appellant, Mrs. Allen, two hundred acres, as the number actually occupied. This may have been a somewhat liberal allowance, but, under all the circumstances of this case, we are disinclined to disturb the judgment, and it is therefore affirmed.

Affirmed.