# Lyon et al. v. Dees.

*Bill in Equity for the Redemption of Lands, and for the
Cancellation of Deeds.*

1. *Bill to redeem; multifariousness.*—A bill filed to redeem lands
covered by several mortgages to the same defendant, and to have
cancelled a deed executed by the sheriff under an execution sale, the
judgment debt being paid, and to have cancelled a deed from the
mortgagee defendant to his sister, which was made without consid-
eration, is not multifarious, since the court having jurisdiction for
one purpose will, upon proper proof, settle all questions necessary to
the granting of the relief prayed.

2. *Same; mortgagee chargeable with proceeds from the sale of land.*—On
a bill filed for redemption from various mortgages given to se-
cure the same debt and for an accounting, the mortgagee is properly
chargeable with the price of a part of the land sold under one of the
mortgages, though a defective deed was made to the purchaser, and
the latter had not paid the amount bid at the sale, when it appears
that the conveyance was intended to operate as a deed, and the sale
has been ratified by the mortgagor who is the complainant.

APPEAL from the Chancery Court of Choctaw.
Heard before the Hon. W. H. TAYLOE.
The bill in this case was filed on December 29, 1886,

by the appellee, W. J. Dees, against J. M. Lyon, M. J. Lyon, his sister, and Calvin Dees; and prayed for an accounting between the defendant J. M. Lyon and the complainant, and that the complainant be allowed to redeem certain lands, which were conveyed to the defendant J. M. Lyon by a mortgage, and afterwards sold under the power of sale; and that the deed from the sheriff to J. M. Lyon, conveying the lands sold under an execution sale be set aside, and that the deed from J. M. Lyon to M. J. Lyon, his sister, be cancelled as being voluntary and void. The respondents interposed a demurrer to the bill, on the ground of multifariousness. This demurrer was overruled. Such other facts as are necessary for an understanding of the questions decided on this appeal are sufficiently stated in the opinion.

On the final submission of the cause, on pleadings and proof, the chancellor decreed that the complainant was entitled to the relief prayed for. The present appeal is prosecuted by the respondents, who assign as error the interlocutory decree overruling the demurrer, and the final decree of the chancellor.

H. T. TAYLOR, for appellants.

W. F. GLOVER, contra.

COLEMAN, J.—The amended bill shows that appellant J. M. Lyon, the defendant, was the assignee of a judgment recovered by one Ward for the sum of $482.70 against W. J. and Calvin Dees; that after the death of Ward the judgment was revived in the name of the assignee, with the consent of the judgment debtors, for the full amount of the judgment. The bill further avers that J. M. Lyon was the mortgagee of three several mortgages executed by complainant Dees, one dated 18th of May, 1878, for $500, one dated 27th of August, 1878, for $514, and one dated March 6th, 1882, for $350. The bill avers that the two mortgages of the year 1878 were executed to secure the same debt and embraced 1,300 acres of land, the subject of this controversy. The bill also avers that Ward, the judgment plaintiff, agreed with complainant and Calvin Dees, the judment debtors, to take $200 for the judgment, that this amount was advanced by J. M. Lyon as a loan to them, under the

agreement that the judgment was to be assigned to him merely as a security for this loan. The bill further avers, that the consideration of the mortgage of March 6th, 1882, for $350 included the $200 loaned to pay Ward for the judgment, some advances which were to be made by Lyon to assist them to make a crop, and usurious interest, and that this latter mortgage was upon other lands and property not embraced in the mortgage of 1878. The bill avers that Lyon had proceeded to enforce both the judgment for its full amount, and also the mortgage given to secure the same debt. The bill avers that J. M. Lyon had used his advantages as mortgagee and assignee oppressively and unjustly. That he had extorted large sums of money as forbearance money and had taken possession of all the lands, and all the property conveyed in the mortgages. The bill avers that complainant had fully paid his entire indebtedness, prays for an account, and that he be let in to redeem, and offers to do equity. The defendants demurred to the bill on the grounds of multifariousness, in that the bill seeks to redeem under a judgment and also under mortgages.

The foregoing statement of the averments of the bill is a sufficient answer to show that the bill is not subject to the objection of multifariousness. The object of the bill is to redeem the lands from the same debtor covered by several mortgages, and to cancel the deed of the sheriff executed to J. M. Lyon, and to cancel the deed of J. M. Lyon to his sister, Mary J. Lyon. The court having jurisdiction for one purpose, will settle all questions necessary to granting the relief prayed upon proper proof. *Lyons v. McCurdy*, 90 Ala. 497, 8 So. Rep. 52; *Bullock v. Tuttle*, *Ib.* 439 and 440, 8 So. Rep. 69.

To so much of the bill as averred that the judgment was assigned to J. M. Lyon as a mere security for a loan of two hundred dollars, the respondent pleaded that the judgment was revived for the full amount, with the consent of the complainant. This question was considered and adjudicated adversely to respondents by this court on a former appeal.—*Lyon v. Dees*, 84 Ala. 595, 4 So. Rep. 407. We will not consider this question further.

Upon submission of the case upon pleadings and proof, the chancery court held that plaintiff was entitled to relief, and ordered the master to state an account, and

to eliminate from the account all usurious interest charged
and collected.   The register held a reference, stated the
account, and reported that the debt secured by the mort-
gages of 1878 had been overpaid by $366.31, and that upon
the mortgage of 1882, which included the amount loaned
to secure which the judgment was assigned, there was a
balance due J. M. Lyon of $9.53.   We think there is an
error in the statement of the latter account, and upon a
proper statement it will be seen that this debt, also, has
been overpaid.   On this latter statement the register
found that on November 1, 1882, there was a balance
due J. M. Lyon of $186.40.   The interest should have
been calculated on this amount to June 15, 1885, to
which should have been added court costs paid, $65.41,
with interest thereon to June 15, 1885.   These sums,
with interest included, amount to the sum of $292.27
due J. M. Lyon on the 15th of June, 1885.   This amount
should be credited of that date with $240, the purchase
price of 160 acres of land sold  that day, and which
are not sought to be redeemed, and also with $22.30, re-
ceived from sale of personal property sold January 15,
1885.   Adding these together, we have $262.30, to be
credited upon the balance, $292.27, due J. M. Lyon, and
we have a balance due Lyon June 15th, 1885, of $29.97.
Add to this the interest to October 15th, 1885, and there
was due Lyon on that day $30.76.   On the 18th of Oc-
tober Lyon collected the alternate value of a horse, $40,
and damages for detention, $17.50, which overpaid him
about $27.   As the error was in favor of appellant, it
can not avail him on appeal.   There were many excep-
tions reserved to the finding of the register based princi-
pally on the testimony of J. M. Lyon.   His evidence
was in conflict with the testimony introduced by the
complainant.   We agree with the chancellor that the
weight of the evidence sustains the conclusions of the
register and the exceptions were properly overruled.

It is contended by appellant that he should not be
charged with $240, the purchase price of the 160 acres
of land knocked down to one Seale as the purchaser.
This contention is based upon two grounds; first, that
J. M. Lyon, the mortgagee, never executed a valid deed
to Seale; and, second, that Seale has never paid the pur-
chase money, or any part of it.   On this question the
answer of respondents avers that "Exhibit D is a sub-

stantial copy of the deed executed by said Lyon to said
Seale that day.'' A deed "executed" is one signed, seal-
ed and delivered. Exhibit "D" as an instrument of con-
veyance is defective, but there is no doubt it was intend-
ed to operate as a deed. This is apparent from the in-
strument itself, and from the affidavit of Lyon, filed and
recorded with the instrument. There is no doubt that
the lands were advertised and sold under the mortgage,
and bid off by Seale at the price of $240, on the 15th of
June, 1885, and that Lyon as mortgagee was in posses-
sion of the same, and has remained in possession ever
since. What arrangments, if any, were made between
Lyon and Seale does not concern the complainant. He
has ratified the sale and charged the mortgagee with the
amount of the purchase price. So far as the complainant
is concerned, the title to the lands have passed from him,
and he is entitled to a credit on the mortgage debt for the
amount of the purchase money.

We agree with the chancery court, in the conclusion
that the conveyance by J. M. Lyon of the lands in con-
troversy to his sister, Mary J. Lyon, was without con-
sideration. The consideration expressed in the deed
was three thousand dollars. The consideration attempt-
ed to be proven by respondents was barely admissible
under the answer, but waiving that objection and
examining it upon its own merits, it is wholly unsatis-
factory. Although the consideration expressed in the
deed is three thousand dollars, in response to the 6th
paragraph of the bill, the answer admits that the prop-
erty conveyed to Mary J. Lyon was worth $5,000. The
bill charges that Mary J. Lyon was without means, paid
no taxes and no property was ever assessed to her, and
that she had lived with her brother for fifteen years, de-
pendent on his bounty. The answer admits that she
had lived with him a "series" of years, and avers that
she "claimed" property. There is no proof in the record
that she owned any property or had any resources;
and in order to show a consideration, J. M. Lyon goes
back to the year 1871, fourteen years before the transac-
tion between him and his sister, and testifies that he was
indebted to her, on a settlement made with her on that
day, in the sum of $1,284. He adds the interest on this
amount for fourteen years or more so as to swell it to
$2,722.08. This he says was the real consideration for

[Lyon et al v. Dees.]

the conveyance of land to her, which he admits in his answer was worth $5,000. He was "righteous over much." On the same day and at the same time of the execution of the deed to her, she executed back to him a power of attorney which absolutely empowers him to manage, control, sell and dispose of this property, as fully as if it was his own, ratifying all his acts in the premises. More might be stated, but enough has been said, to show that to sustain this transaction, human credulity must be subjected to a severer strain than justice to the rights of other persons will admit.

By the assignment of the judgment and the execution of the several mortgages, the debtor was completely in the power of his creditor. All the resources of the debtor were tied up, and his credit destroyed. The mortgagee used his power oppressively. A court of conscience will require the debtor to pay the last farthing he justly and legally owes. Having done this, it delights to loosen the iron grasp of the creditor and let the unfortunate debtor go free.

The answer of respondents avers a willingness, upon full payment, "to relinquish all claims to any and all property acquired by said J. M. Lyon from them or either of them," and to "surrender all of their claims to said lands." We are of opinion the chancery court has meted out exact justice and equity to the respondents, and its decree is in all respects affirmed.