Gaines, Associate Justice.
The subject matter of this suit is a lot with a dwelling house and appurtenances in the city of Tyler. Both parties claim under the Texas & St. Louis Railway •Company, as the common source of title. Appellees who were plaintiffs in the cdurt below, claim under a judgment and execution against the last named company and a sheriff’s sale. Appellant claims by virtue of a mortgage or mortgages executed by the same company, and a sale by virtue of a decree of foreclosure rendered in the United States Circuit Court, at Waco. The railroad company executed two mortgages to secure its bonds, both of which were recprded in Smith county before the date of appellees’ levy, one in favor of Whelen and Marquand as trustees, and the other in favor of the Central Trust Company, of New York.
The latter brought its suit to forclose its mortgage in the United States Court, at Waco, before the levy and sale to appellees, and had the property secured by the mortgage placed in the hands of a receiver. After the sale Whelen and Marquand brought a suit in the United States Court, at Dallas, to foreclose their mortgage, which suit was subsequently transferred to Waco and consolidated with the' suit of the Central Trust Company above named. In the consolidated suit, the mortgages were foreclosed and a sale ordered. At the sale the property was bought by a bond holder’s committee and subsequently conveyed to appellant.
The assignments of error will be disposed of in the order in which they are presented in the brief. The first is, that “The court erred in sustaining the objections of plaintiffs to the introduction in evidence of the bill of complaint and the mortgage *635 filed in a suit at Dallas, wherein Henry Whelen and Henry Marquand were complainants, and the Texas & St. Louis Railway Company in Texas was defendant, which was shown to have been consolidated with the suit number fourteen inequity in the court at Waco wherein the Central Trust Company was complainant and the said Railroad Company defendant, because such ruling was a surprise to this defendant, and was not only contrary to the law, but operated to the injury to this defendant otherwise, because the court reserved his decision upon the objection untl after the cause was decided, and the defendant could not then withdraw and amend or otherwise take advantage of the same.”
The appellant, being the defendant below, pleaded a general denial and not guilty, and also pleaded a special answer in which it set forth specially its claim of title. The special answer alleges a suit against the Texas and St. Louis Railway Company by the Central Trust Company of New York, the foreclosure of a “ mortgage or deed of trust ” in that suit, and its derivation of title to all the property of that railroad company, through the sale under that foreclosure. The mortgage to Whelen and Marquand as trustees, is nowhere mentioned in the answer. Although in the action of trespass to try title neither plaintiff nor defendant is compelled to plead his title specially, yet, if either elect to do so he is confined in his evidence to the title so pleaded. (Rivers v. Foote, 11 Texas, 662; Mills v. Alexander, 21 Texas, 162; Custard v. Musgrove, 47 Texas, 218; Sheilds v. Hunt, 45 Texas, 425.)
This is upon the principle, that after having apprized the opposite party of the claim of title or special defense upon which he proposes to rely, it would operate a surprise to the latter to permit him to prove another title or defense not set up in his pleading. This principle applies to the case before us. Though the mortgage or mortgages which were foreclosed in the suit of the Central Trust Company v. The Texas and St. Louis Railway company, are not specifically named in the special answer, yet the inference from the allegations is that it was a mortgage in favor of the complainants in that suit, which was foreclosed and through which the appellant claimed to derive its title. To permit it to set up a title derived through another mortgage, though foreclosed in the same proceedings, would be to surprise appellees, by proving one title when it had given notice by its pleading, that it relied upon another.
*636 But should we hold, which we do not, that the court erred in excluding the evidence of the mortgage and foreclosure proceedings, it would seem that this was error without injury. Admitting for the sake of the argument, that the property was embraced in the mortgage, now in question, the appellees purchased the equity of redemption at the sheriffs’ sale before Whelan and Marquand brought their suit to foreclose. Rot having been made parties to that suit, appellees were not affected by it; and the equity of redemption with us being “ tantamount to the fee at law” their title is superior to that of the purchasers under the forclosure of that mortgage. (Buchanan v. Monroe, 22 Texas, 537; Hall v. Hall, 11 Texas, 547; Byler v. Johnson, 45 Texas, 509; Duty v. Graham, 12 Texas, 427; Foster v. Powers, 64 Texas, 259.)
The complaint in the assignment quoted, that appellant was prejudiced by the judge’s withholding his decision of the question of evidence, until after the trial of the case, we can not consider. We must take the statement in the bill of exceptions, that this was done at the request of defendants’ counsel, as true. If this was a mistake, counsel should have declined to accept the bill and pursued the method laid down by the statutes for properly certifying an exception, when the counsel can not agree. (Rev. Stats., art. 1366.)
Appellant’s second assignment of error is to the effect that the evidence showed that the lot in controversy was covered by the Central Trust Company’s mortgage, and that therefore the • judgment of the court is erroneous. If that mortgage embraced the lot, there is no doubt the judgment should have been for appellant. The difficulty of determining the question arises from the generality of the description of the ' property conveyed. The description, after embracing all the mortgagor’s line of railway in the State of Texas, all branches and extentions then or thereafter to be acquired or constructed in the State, and all sidings, turn outs and switches, proceeds as follows: “And also all the real estate, grants, ways and rights of way, licenses and easements, depot and shop grounds, of the said party of the first part upon which the said railway or railways are situated and which are necessary useful or convenient, for the use, maintenance and operation of said railways, whether now owned or hereafter acquired.”
But there are, however, excepted, exempted and reserved from the lein of this mortgage, “all land grants and land certifi *637 cates heretofore or hereafter received or to be received by the said party of the first part, or to which it is now or may hereafter be entitled, as well as all lands now or hereafter acquired by it, by grant, donation or gift, which are not actually occupied or in use in connection with the operation and maintenance of its said lines of railway.” The lot in controversy was purchased by the Texas & St. Louis Railway Company in 1881, before the execution of the mortgage now under consideration. There is some conflict of evidence as to the purpose for which it was purchased; but the evidence leaves but little doubt, that the controlling motive was to adjust a troublesome suit then be-being prosecuted against the company by the owner of the lot for alleged damage to it by the construction of the railway. The property had a residence upon it at the time of the purchase) but abutting upon the company’s depot grounds, a portion of it was leased for the purpose of a cotton platform. The part upon which the house is situate, which is that now in controversy, was fenced off and has since been leased by the company as a residence, except for a short time, during which the company used it for offices, its office building having been destroyed by fire. As soon as the office was rebuilt the house was again leased as a residence. How it is contended on behalf of appellant, that the lot is embraced in the description in the mortgage of “real estate,” “necessary, useful or convenient for the maintainance and operation of said railway,” and that by the words, “land grants” and “grant” in the exception are meant grants from State and not real estate acquired by purchaser from private persons. It is further contended that even should the words be construed to embrace private grants, the lot in controversy was necessary and convenient for the purpose of operating the road and was bought and held for that purpose, and hence was not included in the exception, but covered by the mortgage.
In regard to the first proposition, we think, that the language of the instrument indicates clearly, that its object was to convey to the trustees the railroad and its branches proper, and only such other real estate as was necessary for the convenient operation of its lines. It is to be inferred from the description of the premises conveyed and excepted, that it had received lands not necessary for the operation of the road by grant from the State, as well as by purchase and donation from individuals. The language of the excepting clause is broad enough to embrace *638 all these; and although the 'word grant, as ordinarily used in our State, conveys the idea of a grant from the government, yet in its legal sense it means as well a grant from an individual. We see no good reason why the one should be embraced in the mortgage and the other excluded; and the mortgage seems to us to evince the intention to convey only such real estate from whatever source derived as was directly used in connection with the operation and in maintenance of the railroad. If this be so, then the question recurs, was the lot in question so used? The court below has found that it was not, and we can not say that the finding was contrary to the evidence. It seems to have been rented for a part of the time since its purchase by the Texas & St. Louis Railway Company, as a place of residence for some of its officers or agents. But this could not be deemed a convenience in operating the railroad. That it was not desirable for offices, is proved by the fact that when the company’s offices were consumed, by fire, they were rebuilt upon other property. In our opinion, this mortgage embraced not only such real estate of the company as was necessary to carry on its business, but also such as was necessary to the convenient and commodious operation of its lines of road; but we can not say, from the evidence, that the court below was in error in finding that the lot in question belonged to neither category.
In his fourth assignment, appellant claims that the court erred in giving judgment for the plaintiff, because, as he insists, the property was in the hands of the receiver appointed by the United States circuit court at the time it was levied upon and sold by the sheriff to appellees. That property in the hands of a receiver by virtue of an order of one court, can not be sold under process from another court, is a proposition of law too well established to be for a moment called in question. But was the lot in controversy in the hands of the receiver? The court below found, and we think, correctly, that it was not covered by the Central Trust Company’s mortgage. Thq bill of that company in the United States court, after setting up the mortgage and giving the description of the mortgaged property therein contained, prayed that a receiver or receivers be appointed of “all and singular the said mortgaged property and premises,” etc. It. would clearly have been improper for the court under this bill to appoint a receiver of any property except that embraced in the mortgage. This was all that complainants asked, and although the description in the order *639 appointing the receiver is somewhat different from that in the mortgage, we think it was intended to mean the same thing. The court acquired jurisdiction over the subject matter only by the bill, and, therefore, if it had appointed a receiver over property not so embraced, it seems to us its action would have been without authority and void. We are not to presume the court intended to do this. We must consider that the property placed in the hands of the receiver was that covered by the mortgage and no more; and that the lot in controversy not being in the mortgage, was not in custodia legis, but was subject to execution and sale at the time appellees purchased.
Opinion delivered October 18, 1887.
What we have already said is sufficient to dispose of the fourth assignment of error.
The fifth assignment is that the court erred in excluding the answers of L. B. Fish and J. W. Paramore to a certain interrogatory propounded by appellant. The assignment is not well taken. The interrogatory, after stating the case, asks the witnesses to "state any fact within their knowledge that will assist the court in arriving at a correct and just conclusion of the case, as fully as if specially here inquired about.” The inquiry is tob general. It leaves the eppesite party to conjecture what the answer may be, and practically deprives him of the benefit of a cross examination. That such a question will not be tolerated, is not an open question in this court. (Chinn v. Taylor, 64 Texas, 385; Allen v. Hoxey’s Adm’r, 37 Texas, 320.)
Appellant, in his sixth assignment of error, makes the point that, because a portion of the lot has been used for railroad purpose, therefore the entire parcel must be deemed "useful and convenient” for operating the road, and, therefore, subject to the mortgage of the Central Trust Company. But we do not think that this follows. A portion of even a small lot may be very essential to the operation of a road, and' the remainder wholly useless for that purpose.
We find no error in the judgment and it is affirmed.

Affirmed.