# Francis *v.* Sheats.

### *Bill to Redeem and Declare Sale Invalid.*

(Decided Dec. 19, 1907. 45 South. 241.)

1. *Execution; Sale Under; Effect of Void Execution.*—A sale of land made under several executions one of which is void, is not void, but irregular and voidable on seasonable application, at most.

2. *Same; Collateral Attack.*—While a sale made under a void execution may be collaterally attacked and set aside on a bill to redeem, if the sale is only irregular and seasonably avoidable, it is not open to such an attack, but the party complaining is put to his motion

[Francis v. Sheats.]

in the court issuing the execution for vacation of the sale, or by original bill for that purpose only.

3. *Mortgages; Purchase of Mortgagor's Interest at Execution Sale; Title Acquired.*—Where the mortgagee acquires without fraud, oppression of other invalidating action, under execution sale, the mortgagor's right of redemption, the mortgagee acquires an indefeasible title in fee.

4. *Same; Redemption by Junior Mortgage.*—Under section 3505, a junior mortgagee gets an indefeasible legal title when he redeems land sold under foreclosure of the senior mortgage.

5. *Same; Administrators; Redemption Attempted; Effect on Heirs.* —The fact that an administrator may subject intestate's land to the payment of debts against the estate, and that any affirmative and effectual act on his part to that end is sufficient, yet, that does not prevent an heir from redeeming the land sold at judicial sale, under the equity descended to him from intestate, in the proper case, notwithstanding the administrator has begun an effort to accomplish statutory redemption.

6. *Execution; Statement of Cost; Applicability to Chancery Cases.* —Section 1883, Code 1896, does not apply to executions by registers of the chancery court, nor is it made to do so by provisions of section 1857.

APPEAL from Morgan Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by J. C. Sheats against W. R. Francis. From a decree for complainant, respondent appeals. Reversed and rendered.

C. C. HARRIS, and CALLAHAN & HARRIS, for appellant. The executions against Sheats and the sale thereunder were not void.—*Griffin v. Daughpin,* 31 South. 849; *Albritton v. Williams,* 32 South. 636; *Marks v. Woods,* 31 South. 978. The rule in dealing with costs in the chancery courts is different from that of the circuit court, and has always been largely in the discretion and under the control of the chancellor.—*Gray v. Gray,* 15 Ala. 771; *Faulkner v. Campbell,* 74 Ala. 357; 80 Ala. 154. The fact that the sale was single and made under separate execution does not even constitute an irregularity. —*Drain, et al. v. Henderson,* 15 Ala. 429; *Simpson v. Sparkman,* 80 Tenn. 360; *DeLoach v. Robbins,* 102 Ala.

296. The failure of the sheriff to make a return is no more than a mere irregularity.—*Forrester, et al. v. Camp,* 16 Ala. 649; *Davidson v. Kahn,* 119 Ala. 369; *Lewis v. Watson,* 22 L. R. A. 297; *Love v. Powell,* 5 Ala. 58. The sale of the land en masse may constitute an irregularity which may authorize the setting aside of the sale on timely application, but is not available in this action.—*Anniston Pipe Works v. Williams,* 106 Ala. 333; *Shroeder v. Young,* 161 U. S. 334. The sale is collaterally impeached for irregularity, and this cannot be done.—*Waldrop v. Friedman,* 90 Ala. 157; *O'Brien v. Davis,* 103 Ala. 433. The mortgagee may purchase the equity of redemption at a sale under execution at the suit of another creditor.—*Teneych v. Craig,* 62 N. Y. 421; *Duvall v. P. & M. Bank,* 10 Ala. 56; *Powell v. Williams,* 14 Ala. 482. If two of the executions were void still the equity of redemption passed under the sale under the valid execution.—*Deloach v. Robbins, supra.* A mortgagee is not estopped to deny the mortgagor's title. —*McGaw v. Deposit Bank,* 38 South. 180; *1st Nat. Bank v. Elliott,* 27 South. 9; *Cooper v. Edmundson,* 73 Ala. 253. The delay was a waiver of the right to set aside the sale.—*Pate v. Henson,* 104 Ala. 603; *Cowan v. Sapp,* 74 Ala. 44; sec. 81 Ala. 525; *Bolling v. Gantt,* 93 Ala. 90. Two years delay is prima facie the limit for the mortgagor or beneficiary to assert his right of disaffirmance.—*Ezzel v. Watson,* 83 Ala. 120; *Goree v. Clements,* 94 Ala. 344; *Mason v. Mtg. Co.,* 124 Ala. 347; *Anniston Pipe Works v. Williams, supra.* Payment of the mortgage debt divests title out of the mortgagee and reinvests it in the mortgagor and there is neither right nor need for redemption.—*Baker v. Burdenshaw,* 31 South. 497. The bill was, therefore, filed in a double aspect and cannot be maitained on that theory.—*Askew v.*

[Francis v. Sheats.]

*Sanders,* 84 Ala. 257; *Griffith v. Ruddersill,* 141 Aia. 200.

E. W. GODBEY, for appellee. A mortgagee cannot buy the equity of redemption at sheriff's sale.—*Griggs v. Banks,* 59 Ala. 317; *Noble v. Graham,* 140 Ala. 413; *Lyon v. Deas,* 101 Ala. 700. A mortgagee cannot buy and assert a paramount title adverse to the mortgagor. —*Moore v. Tittman,* 44 Ill. 370; *Eck v. Swen Munson,* 5 Am. St. Rep. 691; *Mills v. Tucker,* 83 Am. Dec. 74; *Maxfield v. Wiley,* 46 Mich. 288; *Hall v. Westcott,* 5 Atl. 629; 11 Ency. of aLw, 246. The sale of different equities en masse is void.—12 Eng. P. & P. 56; *Smith v. Dow,* 51 Me. 24; *Fletcher v. Stone,* 3 Pick. 252. The sale en masse of the lot and farm property under several execution from the chancery and circuit courts was void. —*Anniston Pipe Works v. Williams,* 106 Ala. 324; *Reid v. Carter,* 26 Am. Dec. 424; *Jones v. Matkin,* 118 Ala. 341. The price was grossly inadequare.—*Simmons v. Sharpe,* 138 Ala. 451; *Ray v. Womble,* 56 Ala. 38. The executions were void.—*Marks v. Wood,* 31 South. 979; *Brainard v. Harrison,* 53 Ala. 362; Sec. 857, Code 1896; *Allen v. Allen,* 80 Ala. 156; *Whetstone v. McQueen,* 34 South. 231. The invalidity of one execution avoids the sale.—*Brown v. McKay,* 16 Ind. 485; 27 A. & E. Ency. of Law, 836. The bill is not repugnant.—*Shipman v. Furniss,* 69 Ala. 555; *Dickerson v. Winslow,* 97 Ala. 491; *Adams v. Sayre,* 70 Ala. 324; *McRae v. Singleton,* 35 Ala. 302; *S. B. & L. Asso. v. Stable Co.,* 119 Ala. 175. The bill is not multifarious.—106 Ala. 680; 2 Ala. 611; 50 Ala. 324; 65 Ala. 483; 121 Aia. 292. This is not a collateral attack but a direct attack.—*Lyons v. Deas,* 101 Ala. 101; *Bockett v. Hurt,* 57 Ala. 202. There was no laches as the sale was void.—*Sloan v. Frothering-ham,* 65 Ala. 599; *Shorter v. Smitth,* 56 Ala. 210; *Wal-*

*ler v. Nelson,* 106 Ala. 113; Sheets rights were recognized and there is no laches in consequence thereof.—*Cowan v. Sapp,* 81 Ala. 528; 16 Cyc. 174; *Ray v. Womble, supra.* By joining in a deed with Sheets, respondents are estopped to deny his title.—*Crane v. Morris,* 6 Pet. 612.

McCLELLAN, J.—Assuming that some of the executions under which it is insisted appellant Francis, as purchaser at the sale, acquired the equity of redemption of Sheats in certain real estate, were valid, and another void, it cannot be held, with reference to this consideration only, that the sale was invalid and that no rights passed to the purchaser thereat. The sale was had under four executions; but it by no means resulted that the sale was such an entirety as that the voidness of one of the executions invalidated the sale. The rule is well declared in *DeLoach v. Robbins,* 102 Ala. 296, whether dictum or not, that in such cases the purchaser acquires title and that the sale is not a nullity. This principle is supported in reason and by many respectable authorities, and affirmed by eminent text-writers, among them Freeman on Executions, § 325, and citations in note. Hence the phases of the bill resting on the allegation of invalidity of the sale because one of the executions on which it was had was void are untenable; and, as far as the stated allegation is concerned, the sale invested appellant with the title to the intestate's equity of redemption as sold. Consequently the sale was not void, but irregular and voidable, if defective at all, on seasonable application.

Conceding that the facts averred in the bill make a case of a voidable sale, the question then arises whether, on a bill the paramount purpose of which is to redeem from an alleged mortgage, a merely voidable sale under

execution may be set aside as an incident to the superior purpose of redemption? This court, in the case of *Waldrop v. Friedman*, 90 Ala. 157, 7 South. 510, 24 Am. St. Rep. 775, has expressly decided that under such circumstances a collateral attack on the execution sale is attempted, and that that is not allowable. This rule must always be distinguished from that permitting the bill to redeem to include the setting aside of an absolutely void execution sale, whether such invalidity results from an underlying void judgment or from the execution itself. The case of *Lyon v. Dees*, 101 Ala. 700, 14 South. 564, pertains to the latter rule, and in no wise conflicts with the announcement made in *Waldrop v. Friedman, supra.* The case of *Lockett v. Hurt* was on bill filed to cancel a sheriffs deed because of irregularities in the execution sale in a cause wherein the purchaser was one Hurt, who was also the party from whom redemption was sought and whose fraud in the sale was the invalidating circumstance. It is obvious that this case does not militate against the soundness of the rule in this connection first declared. In short, the principle is that, where the sale is entirely void, it may be incidentally in a proper case assailed and set aside on a bill to redeem; but if the sale is only irregular and seasonably voidable, the party complaining must either make his motion in the court whence the enforcing process emanates to vacate the sale, or else by original bill in equity seek the vacation thereof. The reasons for these distinctions between the two remedies, and controlling their respective propriety, are clearly stated in *Anniston Pipe Works v. Williams*, 106 Ala. 324, 18 South. 111, 54 Am. St. Rep. 51.

One phase of the bill involves the character of title or right acquired by Francis under his purchase at the execution sale. It is insisted, in line with this theory of

the bill, upon the authority of *Griggs v. Banks,* 59 Ala. 311, that in so purchasing Francis, then occupying the relation of mortgagee to Sheats as his mortgagor in the property in which Sheats' equity of redemption was sold at the execution sale, merely removed a prior incumbrance on the premises, and held and now holds them in trust for the mortgagor, or his privies, without having acquired any superior or adverse right to him or them on redemption. If we understand the *Griggs-Banks Case,* Banks became, before the sheriff's sale thereunder, the owner of a judgment of Holmes and Goldthwaite, the first lien on the land on which the defendant therein (Gilmer) had executed several mortgages to secure an indebtedness to Banks. The judgment so acquired by Banks was enforced by a sale of the property, and Banks became the purchaser. Mrs. Griggs, who had a lien on the property, resultant from a judgment in her favor in an action commenced by levying a writ of attachment subordinate to Banks' acquired right under the Holmes judgment and to his several mortgages, filed her bill to redeem and asserted her right to effect redemption by paying the sum bid by Banks at the execution sale. It appears, then, that Banks purchased a prior incumbrance to his mortgage on the lands involved; and on this status this court, through Brickell, C. J., said that "the appellee Banks, a mortgagee, had a clear legal right to disengage the premises from the prior incumbrance created by the levy of attachment. * * * His own safety and the security of his debt, the full and free operation of the title the mortgages conveyed, would be thereby increased. A mortgagee, though clothed with the legal title, is in a large sense a trustee for the mortgagor. The only effect of his removal of prior incumbrances on the mortgaged premises is that he holds them in trust for the mortgagor, without ac-

quiring thereby any right superior or adverse to that of the mortgagor, *when he comes to redeem.* [Italics supplied]. Without compensation to the mortgagee, he will not be permitted to redeem. * * * *Cullum v. Erwin,* 4 Ala. 460. * * * Or if it was an equity of redemption, and he discharged, as he had the legal right to do, the mortgage, his right to reimbursement as a lawful charge would be undoubted."

Under this authority, earnestly pressed upon our attention, the principle deducible is that a mortgagee will be held a trustee for the redeeming mortgagor, or his privy in right, when the removed incumbrance on the subject of the mortgage is prior thereto, and when on redemption the duty rests upon the proposed redemptioner to reimburse the mortgagee for his outlay in removing the prior incumbrance. It is not decided in the quoted case that, in the purchase by a mortgagee of the equity of redemption, he thereby becomes a trustee for the mortgagor to whom, on redemption, reimbursement must be made, nor that by so purchasing the mortgagee acquires no right or title antagonistic to that of the mortgagor. To so hold would repudiate the settled doctrine that a mortgagee may buy, either directly from the mortgagor or at execution sale, the equity of redemption, and thereby secure an indefeasible title to the real estate, subject, in the latter case, to statutory redemption, provided the transaction or purchase is free from fraud or other vitiating circumstances.—1 Jones on Mortgages, § 711. Besides, it is so evident as to only need mention that the equity of redemption so purchased is not an incumbrance which on redemption is a lawful charge, the payment of which to reimburse is a condition of redemption. It is the title itself, as far as the proposed redemptioner is concerned. Such being the rule, it is plain that the principle announced in *Griggs*

*v. Banks, supra,* has no application in this instance, and for the obvious reason, if not others, that if the mortgagee (Francis) acquired at the sale, without fraud, oppression, or other invalidating action, Sheats' equity of redemption, his title was in fee, and not subject to defeasance.

Assuming, without affirming it, that Brock was a junior mortgagee within the terms of the redemption statute (Code 1896, § 3505), and as such effected statutory redemption from the purchaser at the foreclosure sale under the Sheats-Scott mortgage, we are of the opinion, and so hold, that the legal and only effect of that redemption was to invest Brock with the indefeasible legal title to the property. In the case of *Owen v. Kilpatrick,* 96 Ala. 421, 11 South. 476, this court points out some of the distinctions made in these redemption statutes, and construes some of the provisions therein contained, among them that no privilege is thereby accorded any member of the classes mentioned in the statute to redeem from one of that or another class, except with respect to judgment creditors in the manner following." Section 3506 fixes the duty of surrender of possession. Section 3507, made available to the junior mortgagee, among others named, by the use of the term "in manner following," provides for the payment or tender of the purchase money and interest thereon and lawful charges, and that "such payment or tender has the effect to reinvest him with the title." And section 3508 creates a special and speedy remedy upon the conditions there stated, for the recovery of the possession of the land. Notwithstanding some of the terms used in these statutes appear inapt in application to other classes of redemptioners, yet it is evident that the purpose and intent was and is as stated. Such being the result of Brock's redemption, assuming that he had the right as a

junior mortgagee so to do, Francis was a purchaser from Brock, both of whom were, by the foreclosure, bereft of any relation to Sheats, since he (Sheats) was by that foreclosure denuded of any interest or right in the property save the unavailed of privilege of statutory redemption. Furthermore, if Francis' mortgage from Sheats was executed subsequent to the foreclosure of the Scott mortgage, no relation of mortgagor and mortgagee ever existed, under Sheats' mortgage to Francis, because Sheats was deprived by the foreclosure of any right or interest in the property which he could convey by mortgage to Francis. After Brock's redemption from the purchaser, Sheats himself had, as said, no statute-conferred privilege, or right otherwise, to redeem from Brock.—*Owen v. Kilpatrick, supra.* It follows, in this aspect of the bill, that Sheats' heirs cannot redeem from Francis, who holds the property under an independent title and right, unless vitiated by some conduct or act of Francis of which we are unacquainted by this bill.

We cannot concur in the view that the pronounced effort of the administrator to redeem under the statute had the effect to deny to the heirs the right to assert, if so entitled, the equity of redemption passing to them upon the death of the intestate. We are, of course, mindful of the right of the personal representative to subject the lands of a decedent to the payment of debts against the estate, and any affirmative and effective act to that end on his part will suffice. But that principle is in no wise infracted when it is held that the heir may, where warranted, pursue his remedy to effectuate redemption under an equity descending to him, notwithstanding the administrator has begun his efforts to accomplish statutory redemption. The attempt at statutory redemption is in no sense an effective and affirmative act looking to the payment of the debts of the estate, though

such may be the ultimate purpose. If effectuated, it but reinvests the title to the land in the heir, not the personal representative, which, to be appropriated to the payment of the debts, must in the manner provided be subjected thereto. It would, indeed, be a strange departure from established principles to permit the vested interest of an heir in real estate to be divested or rendered nugatory by the ex parte act of the personal representative. This can be done only after the heir has had his day in court.

There is no merit in the insistence that the doctrine of estoppel binds Francis in respect of the lands in which he was to join as grantor with Sheats. Even a grantee who takes under a deed poll is not so bound.— *Cooper v. Watson,* 73 Ala. 252.

We deem it unnecessary, in view of the conclusions announced, to treat other possible questions raised by the demurrer. It results that the demurrers to the bill, rested on the principles discussed, were well taken, and should have been sustained. The decree will therefore be reversed, and one here rendered sustaining them.

Reversed and rendered.

TYSON, C. J., and HARALSON, DOWDELL, SIMPSON, and ANDERSON, JJ., concur.

### ON REHEARING.

McCLELLAN, J.—The solicitor for appellee has kindly brought to our attention, in his application for a rehearing, the fact that in the original opinion the record was erroneously taken to present a case where the execution sale, affecting all the property, was had under executions some of which were valid and some invalid. It appears from the record that all of the lands were not

[Francis v. Sheats.]

sold under all of the executions, but that only the execution issuing in the case of *Sheats v. Sheats* was levied on all the lands described in the bill, and the sale had under that, as well as under the other executions running against C. C. Sheats, and which were levied only on part of the lands described in the bill. Every objection to the validity of the sale under the several executions mentioned in the bill, except with respect to the absence of an itemization of costs on the *Sheats v. Sheats* execution, to which objection we will later refer, are, at most, mere irregularities, which might have been the basis for a seasonable application to set the sale aside. For instance, a sale of separate parcels of property en masse, under execution, is not void, but seasonably voidable.—*Anniston Pipe Works v. Williams,* 106 Ala. 333, 18 South. 111, 54 Am. St. Rep. 51. The reason therefor is set out in the case cited, wherein it adopts the expression in section 296 of Freeman on Executions. The execution in the case of *Sheats v. Sheats* was issued out of the chancery court of Morgan county. Francis bought at the sale had thereunder. The appellees (complainants) assert that this execution was void, because the costs in the cause, going in to compose the sum directed to be made thereby out of the property of C. C. Sheats, were not itemized thereon as required by Code 1896, § 1883. The itemization attempted to be indorsed on that execution is manifestly insufficient, if, as appellees insist, the cited section is applicable to executions issuing out of the chancery courts of the state.

Section 1883 of the Code of 1896 provides that "at the foot, or on some part of the execution, the clerk must state, in intelligible words and figures, the several items composing the bill of costs, and without such copy of the bill of costs, the execution is illegal, and shall not be levied." And section 857 of the present Code

provides that "courts of chancery are authorized to issue such process, mesne and final, as has been used in such courts; and all writs for the collection of money, to obtain the possession of land or personal property, in use in the common-law courts, are to be adapted to the execution of decrees in the courts of chancery." The latter section first appears in the Code of 1852, and has come down unaltered to the Code of 1896; and the former section (1883) first appeared, in its present form and breadth, in the Code of 1886. It is obvious that section 1883, in its letter, has no application to executions issued by registers of chancery courts. It expressly refers to clerks, and throughout our written law, statutory or otherwise, the register is recognized as a distinct official, with distinct functions pertaining to a distinct tribunal, from the clerk. Hence the application to chancery executions of the provisions of section 1883 must depend entirely upon the inquiry whether section 857 embraces the provisions of section 1883 within those to be adapted to the enforcement of decrees rendered by chancery courts. In *Allen v. Allen*, 80 Ala. 156, construing what is the final provision in section 857 of the Code of 1896, it was said: "The purpose of this truism, in our opinion, was to assimilate the whole system of executing the judgments of the chancery courts to that prevailing in our circuit courts, *as far as practicable* (italics supplied), and to allow in each court like writs of execution in like cases." That expression is, of course, sound. But the opinion is entertained that the very general provision requiring, where practicable, the adaptation of the circuit court system for the execution of judgments rendered therein to the enforcement of decrees in chancery courts, does not import a legislative intent to embrace the, in nature, penal provisions of sec-

tion 1883 as within the system assimilated under the provisions of section 857.

Such a statute as section 1883 cannot be extended in application, by implication or by a construction of dubious support in legislative purpose, to conditions not clearly expressed to be within its purview. The declared effect of section 1883 is to invalidate any sale attempted to be made under an execution not bearing the statement of the costs as required thereby. However fair may be its conduct, and however full may be the price obtained at a sale thereunder, the purchaser takes no title, acquires no right, if the execution does not show a compliance with section 1883 as to the indorsed statement—itemization—of the costs. Indeed, a failure to so itemize the costs operates to defeat any sale sought to be effected under the illegal writ, regardless of the insignificance, as compared with the bid sum, of the unlawfully aggregated sum of separable items of costs. There is no escape from the stated result, because it is thus emphatically written by the Legislture, the right of which to so provide has not been questioned. Working such consequences as section 1883 does, we must decline to hold those consequences, flowing directly from a violation of section 1883, which speaks alone of the clerk, and not the register, to have been within the legislative intent, when, after upwards of 30 years' existence of the substance and letter of section 857, without the existence of what is now the (in effect) penalizing clause of section 1883, the lawmakers repromulgated the elder statute, but left it silent as requiring the adaptation of so serious and fatal (in the event) requirement as section 1883 carries. The assimilation of the circuit court system to the execution of decrees may be, and was for many decades, and is thoroughly accomplished, to the

31 R

advantage of the latter tribunal, without the inclusion of section 1883 as within the assimilated system. The motive for the requirement made by section 1883 has been strongly stated here in cases arising on executions issued out of courts of law, but the justness of this motive and reason cannot supply, in this instance, the absence of a more clear legislative intent to lay the duty and penalty of section 1883 upon writs emanating from our chancery courts.

Accordingly, on the case made by this bill, Francis became the purchaser at the execution sale of all the right, title, or interest of C. C. Sheats in the lands described in the bill; and hence, under the principles declared in the original opinion, the heirs at law of Sheats (complainants) cannot redeem from Francis until by seasonable and appropriate action, heretofore indicated, the sale in question is set aside.

The application for rehearing is therefore denied.

TYSON, C. J., and HARALSON, SIMPSON, ANDERSON, and DENSON, JJ., concur.