**SHELTON v. O'BRIEN.    (No. 632–4493.)**

(Commission of Appeals of Texas, Section B. June 16, 1926.)

**1. Mortgages** ⬳594(5)—**Junior lienor, not made a party to action foreclosing senior lien, has right of redemption against purchaser on foreclosure, which right cannot be denied on ground that its exercise would be unprofitable.**

Where senior lienor forecloses lien against owner without making known junior lienor party to action, purchaser on foreclosure holds title subject to right of redemption of junior lienor, which right cannot be denied on ground that its exercise would be unprofitable.

**2. Mortgages** ⬳624(3)—**Junior lienor, not made party to foreclosure of senior lien, can redeem senior incumbrance and obtain assignment of security.**

Right of junior lienor, not made a party to foreclosure proceedings of senior lien, to redeem is not a right to secure conveyance, but to redeem senior incumbrance and to receive assignment of security.

─────────────────────────────────────────
⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Mortgages ⬥⇒624(3)—Prior lienor purchasing land at foreclosure wherein owner is a party acquires owner's right to redeem, and by paying all incumbrances may become absolute owner, subject to junior lienor's right to redeem.**

Prior lienor, purchasing land under foreclosure proceedings wherein owner was a party, acquires owner's right to redemption, and by paying all incumbrances will become absolute owner, but cannot deprive junior lienor of right to redemption except by paying debt due him.

**4. Mortgages ⬥⇒624(3).**

Junior lienor, voluntarily paying off all other liens against property, remains a lienholder whose rights are measured by rights of lienholders whose claims he paid.

**5. Marshaling assets and securities ⬥⇒1.**

Marshaling securities, being an inchoate equity, does not fasten itself on situation at time successive securities are taken, but is determined at time remedy is invoked.

**6. Mortgages ⬥⇒594(1).**

Equity of redemption is considered tantamount to fee in law.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by J. J. Perkins and others against W. O'Brien and others, in which James M. Shelton was substituted for one of the defendants. Judgment for plaintiff was reversed and remanded by the Court of Civil Appeals (276 S. W. 308), and James M. Shelton brings error. Affirmed.

Lumpkin & Trulove and Underwood, Hamilton & Johnson, all of Amarillo, for W. R. Ozier.

Madden, Adkins & Pipkin, of Amarillo, for Guaranty State Bank.

Reeder & Reeder, of Amarillo, for J. J. Perkins.

Carl Gilliland, of Hereford, and Arnold & Arnold, of Graham, for O'Brien and others.

SHORT, J. Since the writ of error was granted to settle the conflict in the opinion of the majority of the Court of Civil Appeals and the dissenting opinion, both of which are reported in 276 S. W. 309, 321, and since we have concluded that the opinion rendered by the majority of the court, written by Chief Justice Hall, correctly construes the law of the case under the facts, we do not deem it necessary to write extensively on the subject. The statement in the majority opinion is very full, and we find it substantially correct, except the following:

"The Amarillo National Bank was never made a formal party, but, together with the Interstate Cattle Loan Company, the Guaranty State Bank, and Bivins, appeared and answered."

The Amarillo National Bank did not appear and answer, though the other parties mentioned did. The plaintiff in error in his application for the writ of error also makes a statement of the case which we find substantially correct, and, except as noted above, in no wise different from that found in the opinion of the majority of the Court of Civil Appeals, which for purposes of this opinion we embrace as a part of it, to wit:

"Your petitioner would show that this suit is a suit which originated in the district court of Potter county, Tex., in cause No. 4098 on the docket of said court, wherein J. J. Perkins brought suit on February 23, 1924, against W. R. Ozier, the Amarillo National Bank, Interstate Cattle Loan Company, W. O'Brien, and the Interstate National Bank et al., to recover the amount due plaintiff on certain vendor's lien notes executed by the said W. R. Ozier in favor of R. B. Masterson in part payment of about 10,000 acres of land situated in Moore county, Tex., and to foreclose the vendor's lien, and also a deed of trust lien given in addition thereto on said lands, as against each and all of the defendants in said suit, said vendor's lien having been transferred and assigned by the said R. B. Masterson to the plaintiff J. J. Perkins after the maturity thereof.

"After the execution of the above mentioned vendor's lien notes, by W. R. Ozier in favor of the said R. B. Masterson, the said Ozier executed a deed of trust to Ura Embry, trustee, for the use and benefit of the National Bank of Commerce and W. O'Brien, on about 5,000 acres of said 10,000-acre tract of land, and known and designated as the west one-half thereof, to secure certain indebtedness owing by the said Ozier to the National Bank of Commerce and the said W. O'Brien, which deed of trust was filed for record in Moore county, Tex., on September 14, 1921, and was given subject to the lien held by Masterson. Afterwards, W. O'Brien sold and transferred his notes, secured by said deed of trust, to the National Bank of Commerce, and on Aug. 29, 1922, the National Bank of Commerce filed suit in the district court of Potter county, Tex., against W. R. Ozier, seeking judgment on the amount of its debt, principal, interest, and attorney's fees, as evidenced by said notes mentioned and described in the deed of trust executed by Ozier to Embry, and to foreclose said deed of trust lien upon the west one-half of said 10,000-acre tract of land, known as the Ozier Ranch.

"After the filing of the suit just mentioned by the National Bank of Commerce against Ozier, and, to wit, on September 2, 1922, the said W. R. Ozier executed and delivered a deed of trust upon all of said 10,000-acre tract of land, known as the Ozier Ranch, to T. A. Curtis as trustee, for the purpose of securing Lee Bivins, the Guaranty State Bank of Amarillo, Interstate Cattle Loan Company, Interstate National Bank, National Bank of Commerce of Amarillo, Amarillo National Bank of Amarillo, Tex., and other creditors, in the payment of the debts owing said beneficiaries by the said W. R. Ozier, which deed of trust was duly recorded in the deed of trust records of Moore county, Tex., on September 8, 1922. The National Bank of Commerce on November 7,

1922, filed an amended petition in this suit against W. R. Ozier, wherein it made the said T. A. Curtis, trustee in the above mentioned deed of trust, a party defendant to said suit, but the beneficiaries named in said Curtis deed of trust were not made party defendants in said suit; however, four of the beneficiaries named therein, to wit, Lee Bivins, the Guaranty State Bank of Amarillo, Tex., the Interstate Cattle Loan Company, and the Interstate National Bank, intervened in said suit, setting up their debts and liens.

"On April 12, 1923, a judgment was rendered in said suit of the National Bank of Commerce v. W. R. Ozier et al., by the terms of which said bank recovered a judgment for the sum of $35,281.30, with interest thereon at the rate of 10 per cent. per annum until paid, against W. R. Ozier, subject, however, to the Masterson vendor's lien notes, and obtained a foreclosure of the deed of trust lien dated August 12, 1921, upon the west one-half of the said Ozier lands, against all of the defendants named in said suit, as well as the interveners, which judgment directed that an order of sale issue to the sheriff of Moore county, Tex., commanding him to seize and sell said tract of land as under execution, and that he apply the proceeds thereof to the payment of all costs and to plaintiff's debt, etc. The order of sale, as directed in said suit, was issued, and said tract of land was sold thereunder by the sheriff of Moore county, Tex., to the said W. O'Brien for the sum of $25,000, he being the highest bidder at said sale, and said land was deeded to him by the sheriff of Moore county, Tex. Thereafter the said W. O'Brien purchased from the National Bank of Commerce the deficiency judgment rendered in its favor in said suit against W. R. Ozier.

"In the case of the National Bank of Commerce v. Ozier et al., the interveners, the Guaranty State Bank of Amarillo, Lee Bivins, the Interstate Cattle Loan Company, and the Interstate National Bank, established their indebtedness against the said W. R. Ozier, as well as established their lien upon the Ozier Ranch, as evidenced by the Curtis deed of trust of date September 2, 1922, subject, however, to the Masterson vendor's lien notes, as well as to the deed of trust lien held by the National Bank of Commerce against the west one-half of the Ozier Ranch.

"In the instant suit J. J. Perkins, as plaintiff therein, sued the said W. R. Ozier to recover the amount due on the Masterson vendor's lien notes, which had been transferred by Masterson to plaintiff, and to foreclose his vendor's lien and deed of trust lien on said 10,000-acre tract of land as against all the parties defendant. In said Perkins' suit the said Lee Bivins, W. O'Brien, the Amarillo National Bank, the Interstate National Bank, the Interstate Cattle Loan Company, Guaranty State Bank of Amarillo, and others were made parties defendant. The said W. O'Brien in his pleading sought to have the east one-half of said Ozier Ranch first sold to satisfy plaintiff's debt and lien. J. M. Shelton, your petitioner herein, who, in the meantime had purchased the claims of the Amarillo National Bank against said Ozier, and who was substituted in said suit for said Amarillo National Bank, set up his claim and sought to recover the amount due thereon, and for foreclosure of the Curtis deed of trust lien, the said Amarillo National Bank having been nam-

ed as one of the beneficiaries in said deed of trust; and also offered to pay the judgment acquired by said O'Brien in the suit brought by the National Bank of Commerce against the said Ozier herein, together with interest thereon and costs, and tendered said sum of money into the registry of the district court of Potter county, and on account of the tender of payment of the full amount of said judgment said Shelton claimed his right to redeem said lands, and to have the same conveyed to him, and asked to be subrogated to all the rights and equities of the said O'Brien. The Interstate Cattle Loan Company, T. A. Curtis, and the Guaranty State Bank of Amarillo set up their claims under the Curtis deed of trust to secure same; the suit of the National Bank of Commerce v. Ozier in which they intervened and claimed by reason thereof the plaintiff should be compelled to sell, first, the west one-half of said 10,000-acre tract of land, on account of the fact of their interests in the west one-half of said lands having been canceled by the judgment and sale in the National Bank of Commerce suit. The court entered judgment in favor of plaintiff J. J. Perkins for the amount of his debt, with foreclosure of his lien against all of the Ozier Ranch, but in said judgment directed that the east one-half of said ranch be first sold to satisfy the debt of said Perkins, and that in the event said east one-half should not bring sufficient money to satisfy said debt then the west one-half thereof should be sold, and in the event said west one-half should not bring a sufficient sum to pay said debt, then the mineral rights under a part of the land in the west one-half of the said ranch, which had been conveyed to Kay and others, be sold; and in the event the sale of all of said property should not bring a sufficient sum to pay said debt, that the balance be made out of said Ozier as under execution; that in the event the east one-half of said land sold for more than sufficient sum to pay the said Perkins, then the proceeds in excess of said amount should be paid to the Guaranty State Bank, the Interstate National Bank, the Interstate Cattle Loan Company, and intervener, J. M. Shelton, petitioner herein, in proportion to the amount due them by said Ozier; that in the event it should be necessary to sell the west one-half of said ranch that the excess of such sale after paying the Perkins debt should be applied on the debt of the intervener, J. M. Shelton. It was further decreed by the court that the said J. M. Shelton, who had tendered into court and paid into the registry thereof the sum of $39,497.35, being the full amount of principal, interest, attorney's fees and costs rendered in favor of the plaintiff in the suit brought by the National Bank of Commerce against said Ozier, be granted an equity of redemption as against the said W. O'Brien as to the west one-half of said Ozier Ranch, and that the funds so placed in the registry of said court by said Shelton be decreed to be the property of said O'Brien, and that the west one-half of said ranch, consisting of about 5,000 acres of land, be decreed to be the property of said J. M. Shelton, subject however to the terms of said judgment. The said W. O'Brien appealed from said judgment and perfected his appeal to the Court of Civil Appeals for the Seventh judicial district at Amarillo, and the said Guaranty State Bank of Amarillo and Interstate Cattle Loan Company also perfected an appeal from said judgment.

And the Court of Civil Appeals on July 1, 1925, rendered a judgment reversing the judgment of the trial court and remanding the case for a new trial. The judges of said Court of Civil Appeals disagreed as to the law of the case, and a dissenting opinion was written by Associate Justice Randolph."

The crux of the vital question wherein the majority and minority opinions differ lies in the fact stated in the first assignment of error, which assails the correctness of the holding that the trial court erred in its judgment wherein the same directs that the title to the land be divested out of the defendant in error, O'Brien, and vested in the plaintiff in error, Shelton, under which assignment of error the plaintiff in error presents two propositions, as follows:

"First Proposition: A lienholder, although a second or subsequent one, who was not made a party to a foreclosure suit by a prior lienholder, can set up his equity of redemption, and by offering equity, that is, by tendering the amount into court, can protect his lien and cannot be deprived of such right by a suit in which he was not a party.

"Second Proposition: Where a senior mortgagee sues to foreclose his mortgage and fails to make the junior mortgagee a party thereto, and at the foreclosure sale purchases the property, and who does not in his pleadings in said foreclosure suit, or otherwise, offer to pay or tender payment of the debt held by the junior mortgagee, the junior mortgagee under such state of facts has the right to redeem the land, by paying the debt of the senior mortgagee, and to take title thereto."

[1, 2] We think the first proposition correctly states the law, but are of the opinion that this proposition is not applicable to the facts which are undisputed in this case; but we do not think the second proposition is correct to the extent that it asserts that the junior mortgagee has the right to take the title to the land merely by paying the debt of the senior mortgagee. It is true that where a senior lienor forecloses his lien against the owner of the fee to the land without making a party to the proceeding a known junior lienor under the sale foreclosing the prior lien, the purchaser thereat, generally speaking, holds the title subject to the right of redemption of the junior lienor. This right of redemption in such a case is one of right which a court cannot deny on the ground that its exercise would be unprofitable. Cram v. Cotrell, 48 Neb. 646, 67 N. W. 452, 58 Am. St. Rep. 714. However, the right of a junior lienor to redeem is not a right to secure a conveyance of the land, but to redeem the senior incumbrance, and the party redeeming is entitled, not to a conveyance of the premises, but to an assignment of the security. 19 Ruling Case Law, Title, "Mortgages," par. 459.

[3] The majority opinion gives to the plaintiff in error his right of redemption to the extent of having his lien enforced against the land under the sale directed to be made should there be enough of the purchase money to pay off the judgment in favor of Perkins, the owner of the vendor's lien notes, as well as the debt due the defendant in error, O'Brien, and leave any remainder, provided the remainder does not exceed the amount due the plaintiff in error by the original owner, Ozier, subject, of course, to the liens, if any, of other junior incumbrancers whose claims are equal in dignity with that of the plaintiff in error. But after the defendant in error O'Brien had purchased the land under the foreclosure proceedings of the National Bank of Commerce, wherein Ozier, the owner of the land, was a party, he acquired the legal title which terminated Ozier's equity of redemption. In other words, O'Brien by his purchase under these foreclosure proceedings in that suit acquired Ozier's rights to redeem the land, and, by paying all incumbrances thereon, would become its absolute owner. However, O'Brien could not deprive Shelton of his right of redemption except by paying to Shelton the debt which Ozier owed to him, but, as has been said, Shelton's right to redeem is not a right to secure a conveyance of the land, but to redeem the senior incumbrance, and he does not become entitled to a conveyance of the premises by paying off the senior incumbrance,' but to an assignment of the security which O'Brien had.

[4] We have found no authorities at variance with the principles here stated, and, although the plaintiff in error has cited in his application many authorities, none of them, as applied to the facts in this case, are in conflict with the propositions we have laid down as being the correct law applicable under the facts. Upon the contrary, many of them are applicable to the facts stated in the record and support the propositions asserted. It is true that by statute in some jurisdictions a junior mortgagee obtains an indefeasible legal title when he redeems land sold under the senior mortgage, but in Texas we have no such statute. Francis v. Sheats, 153 Ala. 468, 45 So. 241, 127 Am. St. Rep. 61. The right to redeem the land itself belonged exclusively to Ozier. It is true, had Ozier paid O'Brien's debt before the sale, the debt would have been extinguished and the lien removed. Then had he paid Perkins the amount due on the vendor's lien notes, these debts would have been extinguished and this lien removed, but had he refused to pay Shelton the debts secured by the deed of trust under which he claimed a lien, the latter could have sued him, foreclosed the lien, and had the property sold, and, of course, would have had the right to have purchased the land at such sale and become its owner. But, had Shelton seen fit voluntarily in addition to paying O'Brien to have paid Perkins, as well as all other debts, the payment of which had been secured by a lien on the land given by Ozier, he would still have been a mere lienholder, while Ozier would have continued to be the owner of the

land, subject, however, to the liens in the hands of Shelton, whose rights would have been measured by the rights of the mortgagees whose claims he had paid. St. Louis, A. & T. R. Co. v. Whitaker, 68 Tex. 630, 5 S. W. 448; Willis v. Smith, 66 Tex. 31, 17 S. W. 247; Silliman v. Gammage, 55 Tex. 365; James v. Jacques, 26 Tex. 320, 82 Am. Dec. 613; Buchanan v. Monroe, 22 Tex. 541; Wright v. Henderson, 12 Tex. 43; Duty v. Graham, 12 Tex. 431, 62 Am. Dec. 534; Evans v. Borchard, 8 Tex. Civ. App. 276, 28 S. W. 258; 27 Cyc. p. 1804–1806; 4th Kent, 160–2.

[5, 6] The only remaining assignment of error challenges the correctness of the opinion of the majority upon the subject of marshaling the securities, and, as said in that opinion:

"Marshaling, being an inchoate equity, does not fasten itself upon the situation at the time the successive securities are taken, but is one to be determined at the time the remedy is invoked. 18 R. C. L. 456. On the other hand, the equity of redemption is considered in itself 'tantamount to the fee in law.' St. L., A. & T. R. Co. v. Whitaker, 68 Tex. 630, 5 S. W. 448."

We are of the opinion that, under this correct statement of the law applicable to the doctrine of marshaling securities, this assignment should be overruled.

We therefore recommend that the judgment of the Court of Civil Appeals reversing the judgment of the district court and remanding the case for another trial be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.