## WILEMAN et ux. v. FEDERAL FARM MORTG. CORPORATION.

### No. 5524.

Court of Civil Appeals of Texas. Amarillo.

Feb. 22, 1943.

Rehearing Denied March 29, 1943.

Dennis Zimmermann, of Tulia, for appellants.

Lewis Rogers, Wm. N. Stokes, Jr., and H. A. Berry, all of Houston, for appellee.

FOLLEY, Justice.

This suit was filed by the appellants, W. L. Wileman and wife, Lulu Wileman, against the appellee, The Federal Farm Mortgage Corporation, for the title and possession of 200 acres of land in Swisher County alleged to constitute the homestead of appellants, and being all of the Southwest $\frac{1}{4}$ and the West 40 acres of the Southeast $\frac{1}{4}$ of Section 167 in Block M–G. Appellants attacked as void a trustee's sale of this and other land under a deed of trust

executed by them and R. H. Wileman and wife, Jennie Wileman, who were made cross defendants by appellee. The trial resulted in a judgment that appellants take nothing and in favor of appellee for the title and possession of the 200 acres of land.

It appears that the lien which forms the basis of this controversy originated December 20, 1929, when R. H. Wileman and Jennie Wileman executed a deed of trust in favor of Wm. Peck, trustee for Peck, Wright, Peck Investment Company, to secure a promissory note in the amount of $12,845. The deed of trust covered a 960-acre tract of land in Swisher County then owned by R. H. Wileman and wife, which included all of said Section 167 and the East ½ of Section 158 in Block M–G. Such deed of trust contained provisions granting the usual power of sale to the trustee. At the time of the creation of this lien, the appellants admittedly possessed no interest in any of the 960 acres of land. However, on March 16, 1931, R. H. Wileman and wife conveyed the 200 acres in Section 167, here in controversy, to appellant, W. L. Wileman. The deed conveying this 200 acres recited a cash consideration of $2,000, but there was no assumption, or mention made therein, of any part of the outstanding indebtedness against the land owing to the Peck, Wright, Peck Investment Company.

By application dated December 4, 1933, signed by R. H. Wileman and W. L. Wileman, and by supplemental application dated March 2, 1934, signed by W. L. Wileman, these parties applied for a loan from The Federal Land Bank of Houston and the Land Bank Commissioner in the amount of $17,500, offering as security the 960 acres of land above mentioned. It was represented that $16,086.49 of this loan would be used to pay the principal and interest of the loan held by the Peck, Wright, Peck Investment Company and that $884.74 would be used in payment of taxes. The appraiser for The Federal Land Bank of Houston and of the Land Bank Commissioner valued the 960 acres as having a normal value of $17,500 and a market value of $14,000 as of the date of the appraisal.

Pursuant to such applications, The Federal Land Bank of Houston made a loan to the applicants in the amount of $8700, which was evidenced by an amortization instalment note and secured by a deed of trust dated September 19, 1934, on the 960 acres. This deed of trust was signed by R. H. Wileman and wife, Jennie Wileman, and W. L. Wileman and wife, Lulu Wileman. The instrument recited that the note was executed to renew and extend a superior interest of $7,365, principal and interest owing on the $12,845 note payable to the Peck, Wright, Peck Investment Company, and also to pay taxes due and payable upon the land in the sum of $900. The balance of the loan was used for the payment of National Farm Loan Association stock pursuant to the provisions of the Federal Farm Loan Act, as amended, 12 U.S.C.A. § 641 et seq.

In addition to the above $8,700 loan and in accordance with the provisions of the application submitted by the Wilemans authorizing such procedure, the Land Bank Commissioner made applicants a loan in the amount of $4,400 evidenced by a promissory instalment note and secured by a deed of trust on the 960 acres, which deed of trust was also dated September 19, 1934, and signed by R. H. Wileman and wife and W. L. Wileman and wife. By the terms of this deed of trust the lien held by the Land Bank Commissioner was made second, junior, and inferior to any and all notes held by The Federal Land Bank of Houston. This instrument also contained a provision that the note which it secured was executed by the Wilemans in renewal and extension of the unpaid balance of principal and interest owing on that one certain promissory note for the sum of $12,845, of the date of December 27, 1929, executed by R. H. Wileman and Jennie Wileman, payable to the Peck, Wright, Peck Investment Company and secured by the deed of trust executed to Wm. Peck, trustee. The mortgagors in the deed of trust in favor of the Land Bank Commissioner warranted that the indebtedness renewed was a valid lien upon the 960 acres of land and agreed that the "Commissioner or his assigns is hereby subrogated to all of the rights, liens, remedies, equities, superior title and benefits held, owned, possessed and enjoyed at any time by any owner or holder thereof."

As a part of the latter transactions the Peck, Wright, Peck Investment Company executed and delivered to The Federal Land Bank of Houston and the Land Bank Commissioner a joint transfer and assignment dated November 22, 1934, by the terms of which the balance due on the $12,845 note and the deed of trust securing it were transferred to The Federal Land Bank of Houston and the Land Bank Commissioner

"in such proportions as to amounts, and such agreement as to priorities of their respective interest therein as they may determine."

In the deed of trust in favor of The Federal Land Bank of Houston and in the deed of trust in favor of the Land Bank Commissioner, the appellants designated the 200 acres in controversy herein as their homestead, and it is agreed that they were residing upon and using the same as such on September 19, 1934, the date of the respective deeds of trust. It is also conceded that each of these deeds of trust contains the provisions granting the usual power of sale to the trustee.

Default having occurred in the payment of the indebtedness secured by the deed of trust lien, the Land Bank Commissioner, acting through The Federal Land Bank of Houston, agent and attorney in fact, accelerated and declared due and payable the unmatured principal and accrued interest on the $4,400 note executed by the Wilemans in favor of the Land Bank Commissioner. The trustee was instructed by the Land Bank Commissioner to advertise and sell the 960 acres of land. The sale was duly held in Swisher County on March 3, 1942, and appellee, being the highest bidder, became the purchaser of the entire 960-acre tract, including the 200 acres in controversy. From the adverse judgment in the suit attacking this trustee's sale, the appellants have prosecuted this appeal.

The burden of the suit of appellants in the trial court and the chief complaint here is that the lien upon the 200-acre homestead was void at and from its inception because the value of the 760 acres of land in excess of the homestead equaled or exceeded the entire debt at the time the present loan was made and that the Land Bank Commissioner, under the doctrine of marshaling of securities, could not have obtained a valid lien upon the homestead at the time such loan was made, and thus the appellee has obtained no title by virtue of the trustee's sale.

The principle of marshaling of assets and securities had its origin in equity for the purpose of protecting junior creditors and lienholders, and in its early application the doctrine applied only to creditors, debtors being entirely ignored. 35 Am.Jur. 395, sec. 21. Modern equitable principles, however, have extended this doctrine in many instances to include debtors, particularly with reference to the mortgagor's right to demand sale of the security in excess of the homestead before resort may be made to the sale of the homestead. So far as we have been able to ascertain, this doctrine does not in any manner affect the lien at the time of its creation, as here contended by appellants. It is applicable only at the time the creditor seeks satisfaction for his claim out of the assets of the debtor. Shelton v. O'Brien, Tex.Com. App., 285 S.W. 260. In 18 R.C.L. 456, in speaking of the doctrine of marshaling, it is said that it "is a mere inchoate equity, and not an equity which fastens itself on the situation at the time the successive securities are taken, but, on the contrary, is one to be determined at the time the marshaling is invoked." The appellee having succeeded to the rights of the Peck, Wright, Peck Investment Company, which were prior and superior to any homestead claims of the appellants, the contention that the lien in question was void ab initio is untenable and must be overruled. In this connection it should be stated that the appellants did not contend in the trial court, nor do they contend in this Court, that the land other than the homestead should have been first sold before resort was made to the homestead, and no point or assignment is presented on that theory. The sole contention of appellants in this regard is that the lien upon the homestead was void from its inception and for that reason no title to the land could pass at the trustee's sale. Thus, we do not wish to be understood as holding that, upon seasonal demand having been made therefor, the appellants would not have been entitled under the above doctrine to have had the land other than the homestead sold before the homestead.

Appellants further assert that appellee acquired no rights under the deed of trust in favor of the Land Bank Commissioner because the note held by Peck, Wright, Peck Investment Company was transferred severally to The Federal Land Bank of Houston and the Land Bank Commissioner, which they assert was in violation of Section 32 of Article 5934, Vernon's Annotated Civil Statutes.

It is true that the section of the statute in question prohibits, among other things, an endorsement which purports to transfer the instrument to two or more endorsees severally. However, such regulation, we think, relates only to legal remedies as to negotiable instruments trans-

ferred as such, but has no bearing upon the equitable enforcement of an obligation in a transaction of this sort where the old note is, in effect, extinguished by the assignment of the existing debt and lien to new parties and a new obligation is created at the special instance and request of the mortgagors, which carries with it all the rights and equities of the old transaction. "Courts of equity have always recognized partial assignments for many purposes and will protect the assignees of such choses whenever they can do so without working a hardship on the debtor." 10 C.J.S., Bills and Notes, p. 687, § 197; 6 Tex.Jur. 665, sec. 63; Goldman v. L. & H. Blum & Heidenheimer Bros., 58 Tex. 630. We therefore overrule this assignment.

What we have said, in our judgment, disposes of the principal contentions of appellants and of the controlling questions in this case. No reversible error having been presented, the judgment of the trial court will be affirmed.