MARY FREEMAN V. COLLIER RACKET COMPANY ET AL.

Decided November 12, 1906.

**1.—Merchant's Stock—Landlord's Lien—Regular Course of Business.**

Where a retail stock of merchandise of the value of $17,000 is sold out in job lots to different purchasers within a period of forty-two days under and by means of a "closing out" advertisement, the sale is not "in the regular course of business" as that expression is used in the statute concerning landlord and tenant, and a landlord of the merchant has a lien upon the job lots so sold to secure him in the payment of the rent of the storehouse occupied by such merchant.

**2.—Statute Construed.**

· The words "to the tenant," as written in article 3228 of the Revised Statutes, held to mean "by the tenant."

**3.—Amount in Controversy—Jurisdiction.**

Where, in a suit for rent and to foreclose a landlord's lien upon merchandise in the hands of a purchaser, it was alleged that the merchandise was of the value of $600, the District Court would have jurisdiction although it developed that the value of the merchandise was less than $500.

Appeal from the District Court of Galveston County. Tried below before Hon. Robert G. Street.

*Maco & Minor Stewart* and *George T. Burgess,* for appellant.—The landlord of a merchant tenant has a lien upon the stock of goods and wares en masse of the merchant in the leased premises, as a security for rent due and to become due, and the only manner in which the goods

can pass from the tenant to a third party free of the landlord's lien is by a sale in the regular course of business of the tenant. Rev. Stats., art. 3251; Marsalis v. Pitman, 68 Texas, 624; Livingston v. Wright, 68 Texas, 708; Block v. Latham, 63 Texas, 414; Allen v. Brunner, 75 S. W. Rep., 821; York v. Carlisle, 19 Texas Civ. App., 269.

*Harris & Harris,* for appellees Garbade, Eiband & Co.—That question should have been submitted to the jury: Wallace v. Southern Oil Co., 91 Texas, 21; Scripture v. Scottish Co., 20 Texas Civ. App., 156; Galveston, H. & S. A. Ry. v. Harris, 53 S. W. Rep., 599; McCartney v. McCartney, 53 S. W. Rep., 390; Mitchell v. McLaren, 51 S. W. Rep., 270; Matula v. Lane, 56 S. W. Rep., 112.

As to usual course of business: Marsalis v. Pitman, 68 Texas, 624.

*James B. & Charles J. Stubbs,* for appellees E. V. Collier and Blum Hardware Company.

REESE, Associate Justice.—Mary Freeman, appellant herein, sues the Collier Racket Company, Jake Davis, the Blum Hardware Company, Garbade, Eiband & Co., and E. V. Collier, the purpose of the suit being to recover of the Collier Racket Company, her lessee, and Jake Davis, its guarantor, the rent alleged to be due for a storehouse in the city of Galveston, leased by appellant to said Collier Racket Company, for a period of forty-one and a half months, ending September 30, 1904. It was alleged that the lessee failed to pay the rent for the months of May, June, July, August and September, amounting to $1,375, which was due. Appellant also seeks to hold the other defendants, the Blum Hardware Co., Garbade, Eiband & Co., and E. V. Collier to the extent of the value of certain goods bought by them of the racket company which were alleged to be covered by the lien for the unpaid rent.

Defendants Garbade, Eiband & Co., the hardware company, and E. V. Collier answered by general denial and specially pleaded that the goods purchased by them from the racket company were purchased in the regular course of business of the racket company, and that they took them relieved of the lien of the landlord for the rent. E. V. Collier and the hardware company also pleaded to the jurisdiction of the District Court, alleging that the amounts sought to be recovered of them respectively were less than $500. This plea was overruled.

The cause was tried before a jury and resulted in a verdict in favor of plaintiff against the racket company and Jake Davis for $1,157.35 and against plaintiff and in favor of the other defendants as to plaintiff's demands against them. From this judgment against her and in favor of said defendants plaintiff appeals.

By cross assignment of error defendants E. V. Collier and the Blum Hardware Company complain of the action of the court in overruling their plea to the jurisdiction.

The court submitted to the jury the issue as to whether or not the goods purchased by Garbade, Eiband & Co., E. V. Collier and the Blum Hardware Company respectively from the racket company were purchased in the regular course of business. The jury were instructed that if they found that the goods were purchased in the regular course of

business they should return a verdict for said defendants respectively. If they were not so purchased the verdict should be against them respectively for the amount of their respective purchases, except as to Garbade, Eiband & Co., whose purchases amounted to more than the rent shown to be due, the measure of recovery against them being the amount of the rent due.

It is assigned as error that the verdict of the jury is contrary to the evidence. Appellant also assigns as error the refusal of the court to instruct the jury, at the request of appellant, that the sales to Garbade, Eiband & Co., Blum Hardware Company, and E. V. Collier were not made in the regular course of business.

From the undisputed evidence are to be gathered the following facts with regard to the sales in question: The Collier Racket Company were lessees of appellant, occupying a storehouse in the city of Galveston under a written lease for forty-two and a half months, which expired September 30, 1904. Of the rent for May, June, July, August and September, 1904, amounting to $1,375, there is due and unpaid $1,157.35. Jake Davis by written memorandum at the foot of the lease contract guaranteed the payment of the rent.

On March 1, 1904, the Collier Racket Company began what is known as a "closing out" sale. The purpose of the sale was to close out their entire stock and go out of business. This sale was advertised in the newspapers, and a large banner was stretched across the sidewalk in front of its store announcing the sale and offering the stock in bulk or in retail. The entire stock of about $17,000 was disposed of, in various amounts and to various purchasers, in about forty-two days, whereupon the racket company went out of business and vacated the premises, leaving unpaid the rent for the balance of the term, that is, for the months of May, June, July, August and September.

During the progress of this closing out sale the defendants purchased of the goods in the leased storehouse in amounts as follows: Garbade, Eiband & Co., $1,355.31; Blum Hardware Co., $199.67, and E. V. Collier, $221. Garbade, Eiband & Co. bought the entire stock of toys at a discount of thirty-three and one-third percent from the cost price, and the entire stock of crockery at twenty percent discount. Other goods were sold some for twenty and some for ten percent discount from cost.

The racket company did both a wholesale and retail business, but their business was all retail and in small quantities except about ten or fifteen percent at wholesale.

All of the defendants knew that the racket company was closing its business, and disposing of its entire stock for the purpose of going out of business. The sales were made substantially in the manner in which such closing out sales are usually made.

It is provided by statute that all persons leasing or renting any residence, storehouse or other building, shall have a preference lien upon all the property of the tenant in such residence, storehouse or other building for the payment of the rents due and that may become due. (Art. 3251, Rev. Stats.) It is further provided, however, that such lien shall not attach to the goods, wares and merchandise of a merchant, trader or mechanic, sold and delivered in good faith in the

regular course of business to the tenant. (Rev. Stats., art. 3228.) The words *"to the tenant"* as written in the statute have been construed to be intended "by the tenant." (Marsalis v. Pitman, 68 Texas, 627.) It was clearly the intention of the Legislature to exempt from the operation of the landlord's lien goods sold in good faith in the regular course of business "by the tenant" and not "to the tenant." Any other construction would destroy the lien intended to be given for any practical use.

In Marsalis v. Pitman, *supra,* it was held that a sale by a tenant occupying a storehouse as a merchant, of his entire stock of goods, then on the rented premises, to certain of his creditors, although made in good faith, was not "in the regular course of business," and that the lien of the landlord on sufficient of the goods bought by one of the creditors was not divested by the sale. It may be that the court rested its opinion upon the fact that the goods were sold to creditors in satisfaction of the indebtedness of the tenant, as in the case of Weil v. McWhorter (10 So. Rep., 131) which, however, does not appear from the opinion. In this view it can not be said that the case is of any value as authority in determining the issue as to whether the sales in the present case were made in the regular course of business within the meaning and intent of the statute.

We have not been able to find any case in this State or elsewhere that throws any light upon the question involved. The decisions upon the question of what is "due course of business" in the transfer of negotiable instruments, we do not think are applicable.

These sales were made openly and notoriously for the purpose of closing up the business of the tenant. He offered the entire stock either in bulk or in such lots and quantities as suited purchasers. The sales were made at a large discount from the cost price, which, however, of itself would not have been of much importance. The entire stock of $17,000 was thus disposed of in about forty-two days, and the defendants here knew that the sales were thus made and for the purpose indicated. If the racket company had, as they would have done if such a purchaser could have been found, sold their entire stock, in one sale, to one purchaser, it would hardly be contended that such a sale was "in the regular course of business."

That the tenant failing to find a purchaser for the entire stock in bulk, but still in pursuance of his intention to sell the entire stock, and go out of business, sold to different purchasers in larger quantities, and in a very much different manner from that in which he generally conducted his business, we think would be equally a departure from the general course of business. The general course of the tenant's business was to sell at retail, and in very small quantities, the evidence showing the average number of sales per day to be two thousand. It is true that not all of his sales were of this character, and that he sometimes sold in larger quantities, but such sales were not of frequent occurrence and amounted to not more than ten or fifteen percent of his sales generally. Such sales as were made to defendants can not be said to have been made in the general course of business. The general course of business of the racket company was to buy and sell, as merchants, such articles as they dealt in, and in this way to conduct a

regular mercantile business. It was in contemplation of such business that appellant leased the premises.

Appellees contend that the sales made to them were according to the usual course of business in case of sales made for the purpose of closing out a business. With equal force it might be contended that a sale of the entire stock, to one purchaser in one sale, was in the usual course of business in way of closing out sale, but a closing out sale, such as this was, was itself out of the general course of business.

The primary purpose of the statute is to give the owner of the building a lien on the goods, wares and merchandise of his tenant to secure the payment of the rent. As the provision giving this lien, unless qualified in some way, would so embarrass a merchant and trader in the general conduct of his business as to operate a serious restraint upon trade, an exception was made in case of such goods as might be disposed of in the general course of business by the tenant. This purpose of the law emphasizes the view we take of it in its application to the present case.

The effect of the undisputed testimony being to show that the sales to defendants were not made in the general course of business, the jury should have been so instructed. There was no other issue in the case. Upon the view we have taken, appellees were clearly liable to appellant for the amount of their respective purchases, and the trial court should have so adjudged.

In this action the District Court had jurisdiction of the cause as to the Blum Hardware Company and E. V. Collier notwithstanding the respective amounts of sales to them was less than $500. The amount of such sales to each of said defendants was alleged to be $600. The cross assignment of error of these defendants is overruled.

Upon this state of the record the judgment of the District Court against appellants and in favor of appellee is reversed and judgment is here rendered against appellees for the amounts of the goods bought by them respectively, about which there is no dispute, except that as to Garbade, Eiband & Co. the judgment will be for no more than the amount of the rent, as shown by the judgment of the District Court against the Collier Racket Company and Jake Davis, the appellant in no event to have satisfaction of more than the amount of her judgment against the racket company.

*Reversed and rendered.*

This opinion affirmed by Supreme Court on certified question. (100 Texas, 475.)