Decided April 17, 1908.

**1.—Appeal—Dismissal—Defective Certificate to Transcript.**

A motion was made by appellee to dismiss this appeal because the certificate of the clerk to the transcript was defective; appellant answered, with prayer for certiorari, waiver of service of such writ by the clerk, and motion to file a properly certified transcript, which accompanied the motion. Held, the matter not being jurisdictional, and no delay being caused thereby, the motion of appellant to file the properly certified transcript should be granted.

**2.—Deed—Fraud or Mistake—Suit to Cancel—Evidence.**

In a suit to cancel a deed on the ground of fraud or mistake in procuring its execution, and a breach of the promise on the part of the grantees to support and maintain the grantor during the remainder of her life, evidence considered, and held insufficient to support the verdict and judgment of the trial court for the plaintiff.

**3.—Absolute Deed—Consideration—Failure to Perform Covenant—Remedy.**

When an absolute deed is executed upon a promise or covenant on the part of the grantee to support and maintain the grantor during the remainder of her life, a breach of the covenants which were the consideration for the deed would not cause the title to revert to the grantor. Her remedy in such case is a suit for damages or for specific performance of the contract.

Appeal from the District Court of Matagorda County. Tried below before Hon. Wells Thompson.

*Linn, Holland & Austin,* for appellants.—A deed cannot be varied, changed or altered by parol testimony so as to add conditions thereto, unless fraud or mutual mistake in the deed as executed is pleaded and clearly shown by the proof. Galveston, H. & S. A. Ry. v. Pfeuffer, 56 Texas, 72; East Line R. R. Ry. v. Garrett, 52 Texas, 138; Texas & P. Coal Co. v. Lawson, 10 Texas Civ., 491; Scarbrough v. Alcorn, 74 Texas, 362; Eckford v. Berry, 87 Texas, 415; Hubby v. Harris, 68 Texas, 94; Wooters v. International & G. N. Ry., 54 Texas, 299; Heffron

v. Cunningham, 76 Texas, 319; Weaver v. City of Gainesville, 1 Texas Civ. App., 286; Faires v. Cockerell, 88 Texas, 428; Belcher v. Mulhall, 57 Texas, 19; Gillespie v. Brown, 30 S. W., 449.

On necessity for tender see Berryman v. Schumaker, 67 Texas, 314.

*Gaines & Corbett,* for appellee.

PLEASANTS, CHIEF JUSTICE.—Heretofore, in this cause, appellee filed a motion to dismiss the appeal on the ground that the transcript filed by appellant was defectively certified by the district clerk. Appellants made answer to this motion, and prayed for a writ of certiorari to the clerk to send up a properly certified transcript. With their answer and motion they filed a paper by the clerk waiving the issuance and service of the writ of certiorari. Appellants also presented with their motion a properly certified transcript and prayed that the same be substituted for the original transcript and filed. We thereupon refused appellee's motion to dismiss, and ordered the properly certified transcript to be filed as such. There was no written opinion at the time.

Appellees now file their motion for this court to prepare and file its written opinion, alleging that the order made by us "is in direct conflict with the order and judgment of the Court of Civil Appeals of the Third District in the case of Paris & G. N. R. Co. v. Armstrong & Brown (83 S. W., 28) and because it is important to have the rules regulating the practice in the higher courts of this State uniform and settled."

The appeal was perfected by approval of the appeal bond February 18, 1907. The record was filed in this court April 8, 1907, the motion to dismiss the appeal July 8, 1907, and appellants' answer to appellee's motion to dismiss and their motion to substitute the perfected transcript accompanied by the perfected transcript, September 23, 1907.

In its opinion dismissing the appeal in Paris & G. N. R. Co. v. Armstrong & Brown, *supra,* the Court of Civil Appeals of the Third District say: "In order for this court to acquire jurisdiction of a cause upon appeal, it is necessary that the clerk's certificate to the transcript show that such transcript contains a true copy of all of the proceedings in the cause." In Conner v. Downes (74 S. W., 781) this court held that the rules for the government of district clerks in the preparation of transcripts were directory and should not be enforced so as to defeat substantial rights pursued with reasonable diligence. The defect in the transcript in that case was that the seal of the clerk was not affixed to the transcript in the manner prescribed by law. Since the order made by us in the present case the Supreme Court, answering a certified question in the case of Freeman v. The Collier Racket Co., et al., 105 S. W., 1129, has held that the jurisdiction of the Court of Civil Appeals does not depend upon the character of the certificate of the clerk to the transcript.

The matter not being jurisdictional and no delay being caused by allowing appellants to file a properly certified transcript in lieu of the one originally filed which is defectively certified, it is within the discretion of this court to allow a properly certified transcript to be filed.

For these reasons appellant was allowed to file the perfected transcript, and appellee's motion to dismiss the appeal was refused.

This suit was brought by appellee against appellants, John W. Elliott and wife, Melissa Elliott, to cancel a deed made by her to them whereby she conveyed to them 415 acres of land on the Thomas Cayce league in Matagorda County, and to recover possession of said premises.

Plaintiff's petition, omitting the formal parts and the description of the land sought to be recovered, is as follows:

"That heretofore, to wit, on the 9th day of October, A. D. 1905, the plaintiff was residing on the hereinafter described tract of land as her homestead, in Matagorda County, Texas; that at said time her son, John W. Elliott, and his wife, Melissa Elliott, were residing in said State and county and on the property hereinafter described, or the property previously conveyed to them by this plaintiff; that this plaintiff is a widow, more than 70 years of age, and it is necessary for her to always have with her some one to look after and care for her, and to nurse her through any sickness that might befall her; that all of her children are of age, and were married and living to themselves on said date; that on said date, this plaintiff was possessed in her own right of a tract of land consisting of 415 acres, more or less, said land being her separate property; that, being desirous of securing herself a support during the remainder of her life and of procuring a home with the comforts and conveniences of life, and of assuring to herself all of the necessities of life in the way of food, clothing and the comforts of life that were needed by her at her age, and to procure the nursing that she might require in sickness, and procuring all necessary medicine, doctor's bills that might be incurred by her, and to relieve her of the care and worry incident to the managing of her estate, she made and entered into an agreement with her said son, John W. Elliott, and his wife, Melissa Elliott, the defendants herein, by the terms of which she was to and did convey to them the land hereinafter described, in consideration of their furnishing to her the necessities hereinbefore stipulated, and that, in conformity with such agreement, she did, on the said 9th day of October, 1905, make and execute to the said John W. Elliott and Melissa Elliott the deed conveyance hereinafter set out; that when said deed was made and executed it was understood and agreed that the same was to contain a clause by which the said property was to revert to her in the event of a breach of any of the covenants and agreements contracted to be kept and performed by the grantees therein. And further, that said John W. Elliott and his wife, Melissa Elliott, were not to have the right or authority to mortgage, hypothecate, sell or convey any part of the property without the consent of this plaintiff; that this plaintiff is old and infirm, and is not able to read or write, and must necessarily rely upon the statements of others as to the contents of written instruments; that the said deed or conveyance did not contain the clause relating to the mortgaging or conveying of said land, and did not contain the clause requiring the strict performance of the covenants of the grantee therein as a condition precedent to the passing of title, and that said clauses were left out of said deed by fraud on the part of the defendants, John W. Elliott and Melissa Elliott, in not properly describing the conditions to whomsoever may

have drawn said deed, or that said clauses were left out of said deed by mistake of the conveyancer who prepared the instrument, but by which this plaintiff can not say, as she is unable to read or write, and relied solely upon the statements of her son, in whom she had full faith and confidence; that the leaving out of said clauses were and did operate as a fraud upon this plaintiff. This plaintiff would further represent that by the terms of said deed of conveyance executed by her, the said defendants were to support and maintain this plaintiff during the balance of her life, and by the terms of said deed they did promise to do so in a manner commensurate with their means and according to the wants and necessities of this plaintiff, during her old age; that said plaintiff was to reside with them, and they were to furnish to her all the necessities of life in the way of food, clothing, and all the comforts of life at their command and needed by her at her age, and to care for and nurse her when sick, and to furnish her with all necessary medicines, and to pay all doctor's bills incurred by her, and all bills incurred for necessary clothing, food, medicines, medical attention, etc. That the property described in said deed is as follows. . . ."

"This plaintiff would further represent to the court that the said John W. Elliott and Melissa Elliott have wholly failed and refused to keep and perform the covenants and conditions of said deed, and that instead of carrying out the agreement according to the purpose and intention of the parties thereto, they, within a few weeks after the procuring of said deed, began to mistreat and absue this plaintiff, and cause her life to become a burden to her; that said defendants have several small children, ranging in years from ten downward, and that they have taught these children to rebuke her and to tell her that the property was the property of their father and mother and themselves, and that she had no right in said property, and that she was a burden to them, and to taunt her with her age and helplessness.

"That said defendant, John W. Elliott, without the knowledge and consent of this plaintiff has mortgaged the property described in said deed and conveyed it thereby to W. E. Sayers, for the sum of $500, and has squandered and wasted the money secured by such mortgage, and is seeking to further mortgage said property and to further encumber it; that if the title to said land remains in the defendants, that they will sell it or will mortgage it to such an extent that they can never redeem it, and it will become a total loss; that this plaintiff will be deprived of the means of support for herself during her old age; that all of the conditions and covenants in said deed set out in said contract and agreement made at the time of the execution of said deed, have been breached by the defendant herein, to this plaintiff's great damage.

"Wherefore, premises considered, plaintiff prays that the defendants, and each of them, be cited in terms of law to appear and answer this petition; that the defendants, and each of them, be restrained from further mortgaging or encumbering said property, and be restrained from wasting the fruits, hire and revenues arising therefrom, and that upon final hearing that said deed be declared to be null and void, and that this plaintiff be restored to the title and possession of her said property as fully as though said deed had never been executed, and

for all costs of court, and all other and further relief, both general and special, either at law or in equity, to which she may be entitled, and in duty bound will ever pray."

The defendants answered by general exception and general denial and several special exceptions and pleas, the nature of which, in the view we take as to the sufficiency of the evidence to raise the issues presented by the petition, it is unnecessary to state. The cause was tried by a jury in the court below and a verdict and judgment was rendered in favor of plaintiff.

The deed sought to be canceled is by its terms an absolute, unconditional conveyance of the land without any reservations whatever and contains covenants of general warranty. The consideration recited in the deed is as follows:

"$5.00 cash, the receipt of which is acknowledged, and the further consideration of the natural love and affection borne by the grantor to the grantees and as a part recompense for my care, support and maintenance during the balance of my life by them, my said son and daughter, which they have promised to do in a manner commensurate with their means and according to my wants and necessities during my old age, i. e., I am to reside with them and they are to furnish me all the necessaries of life in the way of food, clothing and all the comforts of life at their command and needed by me, with all necessary medicines, and to pay all doctors' and other bills incurred by me for any necessary clothing, food, medicines and attention, etc."

We shall not consider any of the numerous assignments presented in appellants' brief except assignment No. 14, which complains of the refusal of the trial court to instruct the jury to find for the defendants on the ground that there is no evidence to sustain plaintiff's allegations of fraud or mistake in the execution of the deed.

The deed was prepared by W. E. Austin, who testified that he prepared it as the request of appellant, Jack Elliott. He further testified that appellee came to his office after he had prepared the deed and he read it over to her and took her acknowledgment thereto; that she fully understood the contents of the deed and expressed herself satisfied therewith; that she did not intimate to him a desire that the deed contain a clause withholding from her son the right to mortgage the property or a clause providing that the title to the property would revert to her upon the breach by appellants of any of the agreements or covenants which formed the consideration for the conveyance.

Appellee testified at length and she does not claim in her testimony that she requested that the clauses mentioned should be inserted in the deed or that there was any agreement between herself and appellants that the conveyance should contain any reservations or conditions of any kind. She says, however, that she did not know when she signed the deed that she thereby gave the property to Jack Elliott to do as he pleased with, and to sell or to mortgage it, and that she thought she was turning it over to him to rent for her benefit. The evidence shows that she can not read, but there is neither allegation nor evidence that she is or was mentally incompetent to contract. Austin testified that after she had executed the deed and it had been delivered she told him that she wanted to reserve the right to the rents from

the place as long as she lived and that he then wrote an instrument giving her the rents for life, which appellant Jack Elliott signed and delivered to her. This is the substance of the testimony upon the issues of fraud and mistake in the execution of the deed, and we do not think it sufficient to raise either issue.

The deed being absolute upon its face the title would not revert to appellee upon failure of appellants to perform the covenants which were the consideration for the conveyance, and her only remedy is a suit for damages or specific performance of the contract. Mayer v. Swift, 73 Texas, 367; Chicago, T. & M. Ry. Co. v. Titterington, 84 Texas, 218; Moore v. Cross, 87 Texas, 561; Freeman v. Jones, 94 S. W., 1072.

We may add that the evidence is insufficient to sustain a finding that appellants have failed or refused to comply with the contract as expressed in said deed, or that they ever mistreated appellee.

We think under the undisputed evidence in the case appellants were entitled to a verdict, and the court should have so instructed the jury. It follows that the judgment of the court below should be reversed and judgment here rendered for appellants and it has been so ordered.

## ON MOTION FOR REHEARING.

In the main opinion heretofore filed in this case we state that the deed from appellee to appellants "contains covenants of general warranty," and that appellee went to the office of the attorney who wrote the deed and there executed it. Neither of these statements are correct, and while neither of them are at all material to the issue upon which the appeal was decided, at appellee's request we make the following corrections:

The record shows that the deed did not contain covenants of warranty. It is, however, an absolute unconditional conveyance of the land for the consideration stated in the opinion. We were led into the error of describing the deed as a deed with general warranty by a statement to that effect contained in appellants' brief, which we are sure was inadvertently made. The record also shows that the deed was executed at the home of appellee and not, as stated in the opinion, at the office of the attorney.

We further say in the opinion "that the evidence is insufficient to sustain the finding that the appellants have failed or refused to comply with the contract as expressed in said deed or that they ever mistreated appellee." After a more careful reading of the contradictory and confusing testimony of the appellee, we conclude that the jury might have found that appellants had not complied with the contract. She testified that appellants had not treated her with proper consideration, had allowed their children to be disrespectful to her, and that on at least one occasion appellant Jack Elliott, when in a state of intoxication, had cursed her and told her to get out. While she says that they did not furnish her with medicine, clothing or anything of that kind, she further says that she was not refused anything she asked for, but that her money paid for every thing she got.

We adhere to our former conclusion that there is no evidence to

sustain the allegations of fraud or mistake in the execution of the deed. The only evidence relied on by appellee to show any mistake in the deed is the testimony showing the failure of the attorney Austin, who drew the deed, to embody therein the stipulation that appellee should have the revenues from the land during her life, and the statement of appellee that she did not know when she executed the deed that she was turning the property over to her son absolutely to do with as he pleased. As stated in our former opinion, after Austin ascertained that appellee desired to retain the rents from the property during her life, he prepared an agreement to that effect which was executed by appellants. This agreement was as follows:

"The State of Texas, )
  County of Matagorda.)
    "It is distinctly understood by and between the parties hereto that the rents and revenues of the tract of land (being the rest and residue and remainder left out of a certain 629-acre tract, said remainder estimated to be 415 acres more or less), this day conveyed by Gertrude E. A. Elliott by deed of gift to John W. Elliott and wife, Melissa Elliott, shall become and remain the property of the said Gertrude E. A. Elliott during her life time, but same shall be collected for her by her son, John W. Elliott, and the renting of said lands, the fee of which has been conveyed as aforesaid, shall be in the hands of John W. Elliott, and the same turned over to her, the said Gertrude E. A. Elliot as she may need to do with as she pleases.
    "Witness our hands this 9th day of October, 1905.
John W. Elliott,<br>Melissa Elliott."

The testimony of appellee that she did not know that she was conveying the land to her son to do with as he pleased was elicited by her answers as follows:
    "Q. When this deed that is here was made, did you know that you were turning this property over to Jack absolutely to do what he pleased with it?
    "A. No, sir, I did not.
    "Q. Did you know you were making a deed that would enable him to sell and mortgage that property?
    "A. No, sir, I did not know it.
    "Q. You cannot read? Can you read and write?
    "A. No, sir.
    "Q. You have to depend on what others tell you?
    "A. They can put down anything and read it to me and I don't know five minutes afterwards what it was.
    "Q. When you made and signed this deed on the 9th day of October, did you know that you gave to Jack this property to do as he pleased with it, sell it, mortgage it or anything else?
    "A. No, sir, I did not.
    "Q. Did you think you were turning it over to him to rent for your use?
    "A. Yes, sir.

"Q. Did you ever agree that Jack should have this property and an instrument should be written to turn it over to him as his own, to handle as he pleased?

"A. No, sir.

"Q. Did you ever agree that he should have this property to do as he pleased with, that he should own it?

"A. No, sir."

We do not think this testimony tends to prove the allegations of fraud and mistake contained in the petition, or is sufficient to raise such issue. Such being our conclusions the motion for rehearing is overruled.

*Reversed and rendered.*

Writ of error refused.